Delbert PRUETT, Respondent,

v.

FEDERAL MOGUL CORPORATION, Appellant,

and

Travelers Commercial Casualty, Appellant,

and

Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.

No. SD 31360.

Missouri Court of Appeals, Southern District, Division One.

April 24, 2012.

298

Mary Anne Lindsey, St. Louis, for Appellant, Federal Mogul Corp.

Jonathan James Linter, St. Louis, for Appellant, 2nd Injury fund.

James Nelson Guirl, II, St. Louis, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant Federal Mogul Corporation ("Employer") appeals from the Labor and Industrial Relations Commission's ("the Commission") "Final Award Allowing Compensation (Affirming Award and Decision of Administrative Law Judge ["ALJ"])" which found Respondent Delbert L. Pruett ("Claimant") to be "permanently and totally disabled" and found no liability on the part of the Treasurer of the State of Missouri as Custodian for the Second Injury Fund ("the Fund").[1] Employer brings four points of Commission error. Finding no merit in Employer's claims, we affirm the Commission's award.

1. Claimant was also awarded temporary total disability benefits from November 9, 2005, through June 8, 2006, as well as past medical expenses from Employer.

Claimant, who was sixty-four years old at the time of the hearing, began working for Employer, a manufacturing facility, in 1977 following his honorable discharge from the army.[2] Claimant was employed as a machine operator for Employer and his duties included standing on his feet all day, squatting, repetitive bending, and lifting twenty to thirty pounds on a frequent basis. On August 4, 2005, while working for Employer, Claimant was moving between machines when he tripped on a rubber floormat and caught himself on a table, twisting his lower back. He immediately felt pain in his lower back as well as numbness in his left leg. He reported the injury to his supervisor, but declined medical attention at that time and finished his shift. He returned to work in the days following the incident although he was walking with a limp on his left side and his left leg was numb and somewhat immobile.

Claimant eventually requested medical care from Employer and an appointment was made for him with Dr. John Hunt for October 5, 2005. Dr. Hunt recommended an MRI of Claimant's lumbar spine, but this test was not authorized by Employer. On October 14, 2005, Claimant filed his "REPORT OF INJURY" with the Division of Worker's Compensation.

Thereafter, on October 27, 2005, Claimant sought emergency medical attention at Dexter Memorial Hospital due to continuing low back pain and lower extremity issues. He reported to the treating physician that he injured his lower back at work in August of 2005 and he was diagnosed with chronic lumbosacral instability and radiculopathy of the left lower extremity. He then saw his personal physician, Dr. Ted Hatfield ("Dr. Hatfield"), who also

recommended an MRI, after Claimant's report of a work-related injury.[3] Dr. Hatfield noted that "Dr. Hunt thought [Claimant] had a 'slipped dis[c]' and needed an MRI, but workers' comp refused." Dr. Hatfield also noted that Claimant should remain off work and should schedule an MRI. Dr. Hatfield told Claimant to remain off work from October 27, 2005, to November 8, 2005. Claimant returned to work on November 8, 2005, and was unable to perform his duties. November 8, 2005, was Claimant's last day working for Employer.

Dr. Hatfield again saw Claimant on November 9, 2005, at which time Claimant reported having pain in his lower back as well as numbness and tingling in his lower left extremity. An MRI was performed on Claimant's lower back on November 28, 2005. The MRI revealed "a large central disc extrusion with evidence of radial tear/fissure seen at the L4–5 level narrowing the spinal canal and bilateral neural foramina. . . ." Claimant was then referred by Dr. Hatfield to a neurosurgeon, Dr. David Yingling ("Dr. Yingling"). Claimant was examined by Dr. Yingling on December 20, 2005, at which time Dr. Yingling recommended back surgery on Claimant's lumbar spine due to Claimant's symptoms of extreme lower back pain, lower extremity numbness, and the fact that his left leg would often give out. Dr. Yingling's review of Claimant's MRI revealed left lateral disc protrusion with "stenosis left greater than right at the L4–5 and L5–S1 levels, causing neural impingement on the left." Claimant then underwent "L4–5 and L5–S1 segmental decompression and discectomy" surgery on January 4, 2006, yet following the sur-

---

**2.** Claimant finished school through the 7th grade, received his GED while in the military and served two tours of duty in Vietnam.

**3.** Dr. Hatfield had previously treated Claimant in May of 2004 for some low back pain and at that time diagnosed him with degenerative disc disease and osteoarthritis.

gery he was still symptomatic. Thereafter, he underwent physical therapy and pain treatments, and was released from Dr. Yingling's care on June 8, 2006, with a restriction that he was not to lift over fifteen pounds. After his release from medical treatment, Claimant was told by Employer that there was not a position available for him that would meet his restrictions. In December of 2006, he retired from Employer with a retroactive retirement date of June 1, 2006.

Claimant filed his "CLAIM FOR COMPENSATION" on November 4, 2005. A hearing was held before the ALJ on February 3, 2010. In addition to the facts stated above, at the hearing Claimant testified that, as for pre-existing health issues, he was diagnosed as an insulin dependent diabetic in 1996, but did not feel that created any complications with his health or employability. He further reported he suffered from post-traumatic stress disorder relating to his years in the service and often had headaches and flashbacks. He also stated that while in the military he suffered a hearing loss of greater than thirty percent. Claimant testified that at the time of the hearing he had ongoing pain in his low back and problems with the use of his left leg including lack of sensation, tingling, and numbness. He related he could only sit for approximately thirty minutes at a time without back pain, that he could only walk a block as a result of his issues, and that he could stand for only thirty minutes at a time. He stated that he was unable to bend forward, he could not squat or kneel down, and was able to lift very little weight. He related he was able to perform light housework and drive. He further related that he did not sleep well because of the pain and only slept about five hours at a time. He was not under a physician's care at the time of the hearing but took medicine for pain management.

He also testified that following his separation from Employer he attempted to find another job at "Emerson" and "Wal–Mart" but was rejected.

The deposition testimony of Dr. Thomas Musich ("Dr. Musich") was offered by Claimant. Dr. Musich testified he had practiced "industrial medicine" and family medicine for a number of years and examined Claimant on April 24, 2007. Dr. Musich related that at that time he reviewed Claimant's medical records and performed a physical examination of Claimant. Claimant reported to Dr. Musich the incident of August of 2005, his resulting physical and medical problems, and the fact that he had no significant prior issues with his lower back and left lower extremity prior to the incident. Upon physical evaluation, Dr. Musich found Claimant had severely restricted lumbar mobility, exhibited a "diminished left ankle jerk reflex," walked with a limp, and required the use of a cane for walking. Dr. Musich testified these symptoms were consistent with a diagnosis of lumbar radiculopathy with sciatic issues radiating from the lower back into the lower left extremity. Dr. Musich acknowledged that Claimant's diagnosis prior to the injury of degenerative disc and joint disease by Dr. Hatfield were ailments that were consistent with the aging process. He further acknowledged that numbness in the extremities was also a symptom that could be related to Claimant's diabetes. Dr. Musich opined that "the work trauma of August 2005 is causally related to [Claimant's] persistent low back pain and left lower extremity radiculopathy...." He did not believe Claimant had any disability to the low back prior to the August of 2005 injury and did not find any permanent partial disability existing to any part of Claimant's body prior to the injury date. He felt Claimant was unable to return to work for Employer and that based on his

age, medical history, educational level, and prior work history, he was permanently and totally disabled as a result of the August of 2005 work-related injury and that the August 2005 injury was the sole cause of this disability.

James England ("Mr. England"), a certified rehabilitation counselor testified for Claimant via deposition that he reviewed Claimant's medical records prior to conducting a vocational evaluation on Claimant. He testified Claimant reported to him constant and severe pain in the lower portion of his left back radiating into his left leg. He stated he administered the "Wide Range Achievement Test" to Claimant and that while Claimant scored well on the reading portion of the test he scored at a third grade level on the math portion. He felt it was possible Claimant could function in a sedentary position, but he determined that with his physical and medical restrictions Claimant would be unable to return to a job such as the one he held with Employer. He also related that Claimant would not be able to compete in the open job market and did not possess any transferable skills due to his hearing impairment, age, diabetes, physical limitations, anxiety, and sleep problems. He opined that Claimant was totally and permanently disabled from a vocational point of view and the August of 2005 accident was the sole cause of Claimant's total, permanent disability.

Employer presented the deposition testimony of Dr. David Lange ("Dr. Lange"), a board certified orthopedic specialist. Dr. Lange examined Claimant, reviewed his medical records, and determined that while Claimant had preexisting degenerative issues in his lower back prior to the incident in August of 2005, the sole result of Claimant's work injury was a central disc herniation at the L4–L5 level. Dr. Lange also testified that Claimant's bulg-

ing disc and other degenerative problems were age-related as opposed to being the result of any work-related accident. He stated that whatever disability was suffered by Claimant could be the result of his extended employment with Employer, but could not be confined to the particular event which took place on August of 2005. Dr. Lange testified Claimant had reached maximum medical improvement for his back ailments and further treatment was not indicated. He opined Claimant was totally disabled as a result of his preexisting disabilities coupled with the effects of the August of 2005 incident. He related that Claimant suffered a twenty percent permanent partial disability to the body as a whole at the lumbar spine level based solely on the August of 2005 work injury that caused the L4–L5 disc herniation. Dr. Lange determined that when the disc herniation was added to Claimant's pre-existing injuries the result was that Claimant was permanently and totally disabled. With that being said, he opined Claimant could work at a sedentary level with minimal lifting allowed. It was his belief that the August of 2005 injury alone was not the substantial cause of any permanent total disability sustained by Claimant.

Employer also presented the deposition testimony of Donna Abram ("Ms. Abram"), a certified rehabilitation counselor. In performing her transferable skills analysis on Claimant, she observed he had basic computer skills, a driver's license, a G.E.D., and had an ability to easily change his assigned duties based on his previous employment with Employer. She observed that his math skills were at the middle school level, his reading comprehension was good, he had taken some college classes, and his work history placed him in the skilled range. She noted his medical issues included Type II diabetes; exposure to Agent Orange during the Viet-

nam War that led to a persistent rash on his legs; arthritis; post-traumatic stress disorder; panic attacks; hearing loss and ringing in his ears; a history of depression; liver disease; a possible stroke; a heart attack numerous years prior; dizziness and loss of balance; past chemical abuse problems; lower back pain coupled with numbness and tingling; inability to bend at the waist, kneel or squat; lack of feeling in the soles of both feet; flashbacks and disorientation relating to his military service; and degenerative disc and joint disease. Based on the aforementioned skill levels coupled with his limitations and medical issues, Ms. Abram concluded that he was qualified for sedentary type work. She opined that while Claimant might be employable, she opined it would be extremely difficult for him to obtain and keep a job in the open labor market based on his medical restrictions and other limitations. Further, she admitted there was no evidence that Claimant's pre-existing disabilities, if any, had an effect on his job performance or ability to work for Employer prior to the August of 2005 incident. She concluded that Claimant would have a very difficult time obtaining and maintaining gainful employment.

The ALJ issued his "AWARD" on July 14, 2010. The ALJ ruled Claimant sustained a work-related injury as a result of the August of 2005 accident that occurred within the scope of his employment with Employer. He also found that this incident was a substantial factor in causing his low back injuries and lower extremity issues at the L4–L5 and L5–S1 levels which resulted in his need for treatment and surgery. The ALJ also found any pre-existing issues which might have existed were not in and of themselves disabling and did not hinder Claimant's chances for re-employment prior to the injuries of Au-

gust of 2005. The ALJ concluded Claimant could not compete in the open labor market such that he was permanently and totally disabled. Further, the ALJ specifically noted Claimant's testimony to be credible and that the testimony of Dr. Musich was more credible than that of Dr. Lange. The ALJ determined Claimant was permanently and totally disabled as a result of the August of 2005 work injury and that Employer was liable for permanent total disability benefits. The ALJ also ruled Employer was liable in the amount of $1,786.11 for past medical expenses; that Employer was liable for $15,820.78 for temporary total disability and back permanent and total disability benefits; and that the Fund had no liability in this matter. This award and decision was appealed to the Commission by Employer and the Commission affirmed the award and decision of the ALJ. This appeal by Employer followed.

 In reviewing a workers' compensation final award, "we review the findings and award of the Commission rather than those of the ALJ." *Birdsong v. Waste Mgmt.*, 147 S.W.3d 132, 137 (Mo.App. 2004). This Court

shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1.[4] "Whether the award is supported by competent and substantial evi-

---

4. We note this matter was decided under the law in effect at the time of Claimant's injury,

dence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).[5] "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* Thus, "[o]n a claim that an award is against the weight of the evidence, we examine the evidence in the context of the whole record to determine whether it is supported by competent and substantial evidence." *Fitzwater v. Dep't of Pub. Safety*, 198 S.W.3d 623, 627 (Mo. App.2006). Furthermore, on appeal, "no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." § 287.495.1. As such, "we defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Pavia v. Smitty's Supermkt.*, 118 S.W.3d 228, 234 (Mo. App.2003). This includes the Commission's evaluation of expert medical testimony. *Aldridge v. So. Missouri Gas Co.*, 131 S.W.3d 876, 882 (Mo.App.2004). However, we review decisions of the Commission that are interpretations or applications of law without deference to the Commission's judgment, *Orr. v. City of Springfield*, 118 S.W.3d 215, 217 (Mo.App.2003), and review questions of law independently. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 287 (Mo. banc 1995). When the Commission affirms and incorporates the ALJ's decision in its award, we examine the ALJ's findings as adopted by the Commission.

*Jones v. Washington Univ.*, 199 S.W.3d 793, 796 (Mo.App.2006).

In its first point relied on Employer maintains the Commission erred "in finding Claimant's lumbar spine and left lower extremity conditions were caused by the [August 4, 2005,] accident...." Specifically, it asserts the finding was "contrary to the overwhelming weight of the competent and substantial evidence ... which demonstrate[d] the only work injury, if any, [Claimant] sustained from the accident was an L4–L5 herniation" and that all other ailments "were pre-existing and degenerative in nature, and did not result from the [August 4, 2005,] accident;" that Claimant's testimony "did not constitute competent or substantial evidence which could support [the Commission's] finding of medical causation ..." because the medical conditions "did not fall within the realm of lay understanding and had to be made by competent and substantial medical expert testimony;" and that the Commission "acted unreasonably and contrary to the overwhelming weight of the competent and substantial evidence in finding Dr. Musich's testimony to be probative and credible ..." because Dr. Musich ignored Claimant's pre-existing conditions, relied incorrectly on Claimant's self-reported medical history, and his findings were contrary to the "undisputed medical records and objective diagnostic studies...."

 " 'The claimant in a workers' compensation case has the burden to prove all essential elements of h[is] claim, includ-

---

which was prior to the August 28, 2005, effective date of the "significant changes to the Workers' Compensation Act in Senate Bill 1...." *See Custer v. Hartford Ins. Co.*, 174 S.W.3d 602, 610 n. 3 (Mo.App.2005); *see also Dalba v. YMCA of Greater St. Louis*, 69 S.W.3d 137, 140 (Mo.App.2002). Accordingly, all statutory references are to RSMo 2000 unless otherwise stated.

5. We note several cases overruled by *Hampton*, to the extent they are in conflict with the holding therein, are cited in this opinion in support of other principles of law not affected by the *Hampton* ruling. *Id.* at 224–32. No further acknowledgment of *Hampton*'s effect on those cases needs to be recited hereafter.

ing a causal connection between the injury and the job.'" *Angus v. Second Injury Fund,* 328 S.W.3d 294, 299 (Mo.App.2010) (quoting *Royal v. Advantica Rest. Grp., Inc.,* 194 S.W.3d 371, 376 (Mo.App.2006)). Such determinations relating to "'causation and work relatedness are questions of fact to be ruled upon by the Commission.'" *Id.* (quoting *Royal,* 194 S.W.3d at 376). Pursuant to section 287.020.2, "[a]n injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability."

■ Here, the Commission determined Claimant's August 4, 2005, accident that occurred in the scope and course of his employment with Employer, was "a substantial factor in causing [his] low back injury and his need for medical treatment at the L4–5 and L5–S1 levels" and that "the injury to [Claimant's] low back and resulting medical condition and need for treatment including surgery is medically causally related to the work accident."

There was testimony from Claimant that at the time of the work related injury in August of 2005 he had no previous significant back issues, was not on any medications for pain, had no mobility issues, and had a fairly normal physical medical history for a person of his age. Following the work related injury, Claimant had increasing back pain, numbness and tingling in his lower left extremity resulting in immobility, he developed a limp on his left side, and severe back pain. Claimant reported the injury to Employer and began exploring his treatment options. Both Dr. Musich and Dr. Lange agreed that the August of 2005 accident was a substantial factor in the development of Claimant's disc herniation at the L4–L5 level. It was Dr. Musich's opinion that the work trauma of August 5, 2005, was the substantial factor in the development of Claimant's lower back issues at both the L4–L5 level, as well as the L5–S1 level which resulted in Claimant's surgery.

The Commission found "the opinion of Dr. Musich [was] persuasive and [was] more credible than the opinion of Dr. Lange ..." and it also found Claimant's testimony was credible. It was within its province to make such findings and we defer to such credibility determinations made by the Commission. *Pavia,* 118 S.W.3d at 234; *Proffer v. Federal Mogul Corp.,* 341 S.W.3d 184, 185 (Mo.App.2011). There was competent and substantial evidence to support the causation determination by the Commission. *See Hampton,* 121 S.W.3d at 223. Point I is denied.

In its second point relied on Employer maintains the Commission erred in finding Claimant was "permanently and totally disabled, solely as a result of his work injury." It maintains such a finding was "contrary to the overwhelming weight of the competent and substantial evidence [because] the medical records, testimony of Dr. Lange, and findings of Ms. Abram—demonstrate[d] [Claimant's] work injury, alone, did not preclude him from returning to a reasonable or normal employment ..." such that "any permanent total disability [he] sustained was the result of all his injuries and impairments, thus rendering the Fund liable for permanent total disability...." Furthermore, Employer asseverates that Dr. Musich's testimony "did not constitute competent or substantial evidence ..." to support the award because his sixty percent permanent partial disability rating was "based primarily on [Claimant's] subjective complaints ...," his findings were "internally contradictory," and he failed to "offer any testimony to exclude a finding that some or all of the disability ... was attributable to [Claimant's] pre-existing degenerative disc disease and stenosis of the lumbar spine...." It also maintains the Commission erred in relying

on Mr. England's testimony because Mr. England's testimony "was premised on his belief that [Claimant] had to lie down up to half the daytime hours to relieve his pain complaints ..." but such a conclusion was not supported by the medical evidence or testimony, and Mr. England took into account Claimant's pre-existing infirmities coupled with his injuries of August 4, 2005, in determining Claimant was totally and permanently disabled such that the Fund should be liable for Claimant's permanent total disability.

 "[I]n order for the claimant to be entitled to recover permanent total disability benefits from the [Fund], he must prove that the last injury, combined with his pre-existing permanent partial disabilities, result[ed] in permanent total disability." *Dunn v. Treas. of Mo., Second Injury Fund,* 272 S.W.3d 267, 272 (Mo.App. 2008). "For this reason, 'pre-existing disabilities are irrelevant until the employer's liability for the last injury is determined.'" *Birdsong,* 147 S.W.3d at 138 (quoting *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 248 (Mo. banc 2003)). "If the [claimant's] last injury in and of itself rendered [him] permanently and totally disabled, the Fund has no liability; the employer is responsible for the entire amount of compensation." *Id.* "The testimony of a claimant or other lay witness can constitute substantial evidence of the nature, cause, and extent of disability when the facts fall within the realm of lay understanding." *Silman v. William Montgomery & Assoc.,* 891 S.W.2d 173, 175 (Mo.App.1995); *see also Kuykendall v. Gates Rubber Co.,* 207 S.W.3d 694, 711 (Mo.App.2006). However,

> [w]here the condition presented is a sophisticated injury that requires surgical intervention or other highly scientific technique for diagnosis ... the proof of causation is not within the realm of lay understanding nor—in the absence of expert opinion—is the finding of causation within the competency of the administrative tribunal.

*Silman,* 891 S.W.2d at 175–76.

 Here, as set out above, Claimant testified to having no significant back and extremity issues prior to the incident in August of 2005. He was able to work, to move unaided, was not taking any type of pain medications, and, in fact, had been working overtime hours prior to the incident. " 'The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence.' " *ABB Power T & D Co. v. Kempker,* 236 S.W.3d 43, 51 (Mo.App.2007) (quoting *Reiner v. Treas. of State of Mo.,* 837 S.W.2d 363, 367 (Mo.App.1992)). Further, Dr. Musich opined that Claimant's back complaints in May of 2004 and some symptoms of numbness and tingling in March of 2005 did not constitute any permanent partial disability. He also related these past maladies did not constitute a hindrance to his work prior to August of 2005. Mr. England opined that none of Claimant's prior issues had any effect on his ability to work or his overall employability. Both Dr. Musich and Mr. England found that the work trauma in August of 2005 was the sole reason for Claimant's total and permanent disability that followed. The Commission found "the opinions of Dr. Musich and Mr. England [were] more credible and more persuasive than the opinions of Dr. Lange and Ms. Abram on whether [Claimant's] permanent and total disability was from the last injury alone and of itself." "It is within the Commission's sole discretion to assess the weight to give expert opinions, and its determinations in this

regard will not be disturbed on appeal." *ABB*, 236 S.W.3d at 52 (internal citation omitted). There was competent and substantial evidence to support the finding by the Commission that the Fund had no liability in this matter. *See Hampton*, 121 S.W.3d at 223. Point II is denied.

In its third point relied on Employer maintains the Commission erred in awarding Claimant past medical expenses and that such an award is "contrary to the overwhelming weight of the competent and substantial evidence...." It asserts the Commission erred in "finding Employer waived its statutory right to select the medical care provider" because such a conclusion shows reliance on Claimant's "internally contradictory testimony ... on the issues of whether [he] demanded medical treatment from Employer, whether Employer refused to provide such care, and whether Employer waived its right to direct medical treatment...." It maintains Employer did not authorize Claimant's various treatments such that it had no obligation under section 287.140 to pay Claimant's expenses; and that Employer had no liability for Claimant's past medical expenses in that the only work related injury, if any, was the disc herniation at L4–L5, and there was no testimony distinguishing the care provided for that injury versus the care provided for Claimant's pre-existing injuries.

 Section 287.140.1 provides, in pertinent part:

the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physi-

cian, surgeon, or other such requirement at his own expense.

This statute requires an employer to provide an injured employee medical care but allows the employer to select the medical provider. *Blackwell v. Puritan–Bennett Corp.*, 901 S.W.2d 81, 85 (Mo.App.1995).

As a general rule, an employer is not liable for medical treatment incurred by an employee independently. An employer is held liable for independent medical treatment incurred only when the employer has notice that the employee needs treatment, or a demand is made on the employer to provide medical treatment, and the employer refuses or fails to provide the needed treatment.

*Hayes v. Compton Ridge Campground, Inc.*, 135 S.W.3d 465, 471 (Mo.App.2004) (internal citation omitted); *see also Meyers v. Wildcat Materials, Inc.*, 258 S.W.3d 77, 80 (Mo.App.2008). "Medical aid is, therefore, a component of the compensation due an injured worker under [section] 287.140.1." *Bowers v. Hiland Dairy Co.*, 132 S.W.3d 260, 266 (Mo.App.2004). The employee has "the burden of proving his entitlement to benefits for care and treatment authorized by [section] 287.140.1, i.e., that which is reasonably required to cure and relieve from the effects of the work injury. Meeting that burden requires that the past bills be causally related to the work injury." *Id.* (internal citation omitted).

 Here, as previously related, the Commission found Claimant's work accident of August 4, 2005, was the substantial factor in causing Claimant's low back injury and need for medical treatment at the L4–5 and L5–S1 levels. There was substantial medical testimony in the record supporting this determination.

The record also shows that after the accident, on October 5, 2005, Claimant went to the Malden Medical Center with

complaints of back and hip pain. Dr. Hunt diagnosed disc pathology and ordered an MRI. Claimant testified he spoke to Human Resources about the MRI but they did not authorize it. Claimant also related that on or about November 8, 2005, he went to Dr. Hatfield. Dr. Hatfield diagnosed back pain secondary to an injury at work on August 8, 2005, and ordered an MRI. Claimant testified he later "received a call from workers' compensation" and was told they had rejected any additional medical treatment including the MRI. As a result, the Commission concluded that Employer "waived its right to select the treating physician by denying medical treatment and denying the compensability of the case. The defense of authorization is not valid." Likewise, there was credible testimony from Claimant that he paid for a number of his medical services out of his own pocket or submitted them to his medical insurance company as opposed to routing them through the workers' compensation insurance. Claimant testified as to his various medical bills and showed an outstanding balance of $2,200.45. This figure does not appear to have been challenged during the course of the hearing. Based on the foregoing, we cannot say that Claimant failed to meet his burden of proof in this matter. As already stated, "[q]uestions of fact are to be determined by the Commission and this Court is not to substitute its judgment for the Commission's even if the evidence would support a contrary finding" and we do "not disturb the Commission's resolution of issues concerning the credibility of witnesses absent an abuse of discretion." *Miller v. Master Wangs,* 70 S.W.3d 671, 674 (Mo.App.2002). The Commission did not err in ordering Employer to reimburse Claimant for his past medical expenses. Point III is denied.

In its fourth point relied on Employer maintains the Commission erred in grant-

ing Claimant temporary total disability benefits for the period from November 9, 2005, to June 8, 2006, because "no physician opined [Claimant] had to be off work during ..." that period as the result of a work-related injury; Claimant provided no evidence that he was unable to participate in normal employment during that time period due "solely to his L4–5 disc herniation and the discectomy Dr. Yingling performed ... as opposed to his pre-existing spinal stenosis and degenerative disc disease ...;" and no physician "took [Claimant] off work during the period ..." at issue.

■ The purpose of a temporary, total disability award is to cover the employee's healing period. *Birdsong,* 147 S.W.3d at 140. " 'Temporary total disability awards are owed until the claimant can find employment or the condition has reached the point of maximum medical progress.' " *Id.* (quoting *Cooper v. Med. Ctr.,* 955 S.W.2d 570, 575 (Mo.App.1997)).

■ Here, Claimant requested temporary total disability benefits from November 8, 2005, the date Dr. Hatfield ordered him to have an MRI, through June 8, 2006, the date he was released from Dr. Yingling's care. Claimant's MRI was performed in late November of 2005, Claimant was diagnosed by Dr. Hatfield as having a disc herniation in early December, Claimant was then seen by Dr. Yingling on December 20, 2005, and Dr. Yingling performed the discectomy and decompression surgery on January 4, 2006. Thereafter, Claimant continued to experience pain, attended physical therapy on a regular basis, visited pain management physicians, and was convalescing from his surgery. Dr. Yingling saw Claimant again on June 8, 2006, at which time he released him from care, found no further surgeries or treat-

ments would aid him, and had him follow-up with his family physician.

There are no notations in the medical records that Claimant was released by any physician to return to work after Dr. Hatfield noted he would "keep him off work" on October 27, 2005. Claimant testified that the last day he worked for Employer was November 8, 2005, and that following that work day he "couldn't even walk." It is clear that a " 'claimant is capable of forming an opinion as to whether she is able to work, and her testimony alone is sufficient evidence on which to base an award of temporary total disability.' " *Stevens v. Citizens Mem. Healthcare Found.*, 244 S.W.3d 234, 238 (Mo.App. 2008) (quoting *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 249 (Mo. banc 2003)). The Commission found, based on the medical records and expert testimony, that Claimant "reached the point where further progress was not expected on June 8, 2006," and that prior to that time Claimant "was in his healing period...." We defer to the Commission on such issues. *Proffer*, 341 S.W.3d at 189; *Birdsong*, 147 S.W.3d at 141. There was substantial and competent evidence supporting the Commission's award of temporary total disability in favor of Claimant. Point IV is denied.

The Final Award of the Commission is affirmed.

BATES, J., and SCOTT, J., concur.