

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| ROBERT DUNGAN, | ) |
| | ) |
| Appellant, | ) |
| | ) WD77068 |
| v. | ) |
| | ) OPINION FILED: |
| | ) May 27, 2014 |
| FUQUA HOMES, INC., | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division One:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Robert Dungan appeals from a final award entered by the Labor and Industrial Relations

Commission in a workers' compensation case. In his sole point on appeal, Dungan contends that

the Commission erred in concluding that his claim for benefits was not timely filed under section

287.430.[1] Finding no error, we affirm.

## Factual and Procedural Background[2]

On December 18, 2008, Robert Dungan was injured in an accident arising out of and in

the course of his employment with Fuqua Homes, Inc. Dungan slipped on snow and ice as he

---

[1] Based on the date of the accident, all statutory references are to the Revised Statutes of Missouri, as updated through the 2009 cumulative supplement, unless otherwise indicated.

[2] "When reviewing the evidence on the record, we do not view the facts in the light most favorable to the award, nor do we make all reasonable inferences in favor of the award. Rather, we view the facts neutrally." *Tombaugh v. Treasurer of State*, 347 S.W.3d 670, 674 (Mo. App. W.D. 2011) (citation omitted).

was getting tools and supplies out of his trailer to perform some work on a house. He hit his head on the ground and lost consciousness. He suffered injury to his neck. Dungan had never had neck pain before the December 2008 workplace injury, nor had he had any x-ray, CT scan, MRI or other scan of his neck before that date.

Fuqua Homes timely filed a report of injury with the Division on January 8, 2009. Fuqua Homes' insurer accepted the injury and made its last payment for medical treatment on February 19, 2009. As time went by, Dungan's neck pain grew worse. "In late 2010, early 2011," Dungan started talking to the production manager and plant manager at Fuqua Homes about obtaining additional medical treatment, and he testified that they told him they were going to support him with getting his injury "taken care of."

On November 11, 2010, less than two years after injury, Dungan sought treatment for his neck.[3] Dungan testified that the insurance adjuster for Fuqua Homes' insurer "never authorize[d] me to receive treatment. He said you seek treatment upon your own self." Dungan testified that while he was at the doctor's office in November 2010, he spoke with a representative of the insurer, who told him "you got to do what you got to do" and that he "might even have to seek . . . legal action or whatever." Dungan further testified that the adjuster told him "that if I seek treatment I would be seeking it on my own. He didn't say one way or the other who would be paying for it." Dungan received treatment and payment was made by his personal insurance. Dungan testified that he "just thought at that time everything was being taken care of, and then come to find out that my own insurance company picked it up and started paying on the bills." When asked if he specifically requested anyone with the employer or insurer to make payment on bills that were connected with his November 2010 treatment, Dungan testified that he

---

[3] Although Dungan's brief focuses on treatment sought in November 2010, the earliest date on the bills submitted is August 19, 2010.

2

"thought it was being taken care of automatically," and that he told the doctor's staff that it was workers' compensation, but they also wanted his insurance information.

On October 31, 2011, Dungan, acting pro se, filed his claim for compensation with the Division of Workers' Compensation. On April 8, 2013, the case was presented before the Division, with Dungan seeking an award for medical treatment. Two legal issues were presented: 1) whether Dungan sustained an injury requiring medical care; and 2) whether the claim for compensation was timely filed under Chapter 287. The Division concluded that the claim was not timely filed and therefore dismissed the claim and determined that the medical care issue was moot. After a timely application for review, the Commission affirmed the Division's award and entered a Final Award Denying Compensation. Dungan appeals.

## Standard of Review

This court reviews final awards of the Commission pursuant to section 287.495.1, which provides:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*Thompson v. ICI Am. Holding*, 347 S.W.3d 624, 629 (Mo. App. W.D. 2011). "'When, as here, the Commission affirms or adopts the findings of the ALJ, we review the decision and findings of the ALJ as adopted by the Commission.'" *Id.* (quoting *Lawrence v. Anheuser Busch Cos.*, 310

3

S.W.3d 248, 250 (Mo. App. E.D. 2010)). As the issue in this case is a question of law, our review is de novo. *Id.*

## Analysis

Dungan's sole point on appeal is that the Commission erred in concluding that his claim for workers' compensation benefits was not timely filed under section 287.430. Dungan contends that his claim was timely because it was filed within two years of the date of the last medical payment made under Chapter 287 in that his personal insurance company made payment within two years of the date of the injury, and his claim for compensation was filed less than a year after that payment.

Section 287.430 provides, in relevant part:

Except for a claim for recovery filed against the second injury fund, no proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the date of injury or death, or the last payment made under this chapter on account of the injury or death . . . .

As Dungan acknowledges, he filed his claim more than two years after the date of injury, and the report of injury was filed as required. Therefore, his claim is timely only if it was filed with the Division within two years after the date of the last payment made *under Chapter 287* on account of the injury.

In *Bryan v. Summit Travel, Inc.*, this court addressed the issue of whether payment of an employee's medical bills by a party other than an employer or employer's insurer constitutes "payment made under this chapter" within the meaning of section 287.430. 984 S.W.2d 185, 187 (Mo. App. W.D. 1998), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). In *Bryan*, an employee filed a claim for workers' compensation benefits, and the Division of Workers' Compensation denied the employee's claim

4

for failure to file within the applicable statute of limitations in section 287.430. 984 S.W.2d at 187. The Commission issued a final award denying compensation. *Id.* On appeal, the employee argued that "because medical bill payments were periodically made on her account by Medicaid and another insurance provider, the statutory period for filing a claim was tolled at least until the time that the last such payment was made." *Id.* The court initially noted that prior to the amendment of section 287.430 in 1980, courts interpreted section 287.430 as providing "that the statutory period for filing a claim was 'subject to being tolled by *any* payment made on account of the injury.'"[4] *Id.* (quoting *Blair v. Associated Wholesale Grocers, Inc.*, 593 S.W.2d 650, 652 (Mo. App. S.D. 1980), *overruled on other grounds by Hampton*, 121 S.W.3d at 223, and citing *Skinner v. Dawson Metal Prods.*, 575 S.W.2d 935, 941 (Mo. App. 1978), *overruled on other grounds by Hampton*, 121 S.W.3d at 223). The court then determined that the amendment of the

---

[4] There is some confusion in the case law concerning the 1980 and 1981 amendments to section 287.430. Before the 1980 amendment, the statute provided, in relevant part:

> No proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within one year after the injury or death, or in case payments have been made on account of the injury or death, within one year from the date of the last payment . . . .

Mo. Rev. Stat. § 287.430 (1978).

In 1980, the statute was amended to read, in pertinent part: "No proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the date of injury or death . . . ." Mo. Laws 1980 pp. 358-79, 373. The 1980 amendment, *inter alia*, eliminated the language referring to payments made on account of the injury or death. *Id.*

In 1981, the statute was amended again to read, in pertinent part: "No proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the date of injury or death, or the last payment made under this chapter on account of the injury or death . . . ." Mo. Laws 1981, pp. 399-409, 408. The 1981 amendment "added the provision that a claim may be filed within two years after the date of 'the last payment made under this chapter on account of the injury or death.'" *Brown v. Ozark Christian Sch. of Neosho*, 847 S.W.2d 888, 893 (Mo. App. S.D. 1993) (quoting *Loard v. Tri-State Motor Transit*, 813 S.W.2d 71, 74 (Mo. App. S.D. 1991)).

In *Bryan v. Summit Travel, Inc.*, 984 S.W.2d 185, 187 (Mo. App. W.D. 1998), this court referred to "[t]he 1980 amendment's deletion of the words 'any payment made on account of this injury' and addition of the words 'under this chapter.'" There are two inaccuracies in this reference. First, prior to the 1980 amendment, the statute read "in case payments have been made on account of the injury," rather than "any payment made on account of this injury." Second, as discussed above, the 1980 amendment eliminated all language referring to payments made on account of the injury, while the 1981 amendment restored the reference to payments made on account of the injury, rewording it and adding the phrase "under this chapter" in regard to such payments. Although the statute has been amended several times since 1981, the language relevant to our analysis has remained consistent since the 1981 amendment.

statute to include the language "'under this chapter' evidences the legislature's desire to toll the statutory period, not merely when payments of any kind are made on an injured employee's behalf generally, but rather only when such payments are specifically made pursuant to Chapter 287, the Worker[s'] Compensation Law." *Id.* at 187-88. In affirming the Commission's final award denying compensation, the court noted that the payments made on account of the employee's injury were from Medicaid and the employee's spouse's insurer, "neither of which were furnished under Chapter 287." *Id.* at 188. The court held that neither the employer nor the employer's insurance provider made any payments on account of the employee's injury; as a result, the payments "did not fall within the ambit of section 287.430.1 and, accordingly, did not toll the statute of limitations." *Id.*

Dungan contends that *Bryan* is factually distinguishable from the present case because the employer in *Bryan* never made any payment on account of the injury and did not even have notice of a potential claim for about four years,[5] whereas in this case, "the insurer specifically told him to seek care on his own, after having made payment on an immediately acknowledged and accepted claim, and did so within two years from the date of injury." We find that these factual distinctions do not render the *Bryan* holding inapplicable to this case. Section 287.430 provides that "no proceedings for compensation under this chapter shall be maintained unless a claim therefor is filed with the division within two years after the date of . . . the last payment made *under this chapter* on account of the injury or death." The issues of whether the employer ever made payment under section 287.430 and whether the employer had notice of the injury are immaterial to our analysis of the issue in this case, as neither factor alters the statute's provision

---

[5] In *Bryan*, the claimant sustained a severe head injury as a result of a car accident that occurred when she was traveling on business. Because the claimant was unable to recall the circumstances of the injury, there was a significant delay in the filing of a workers' compensation claim. It is unclear when the employer in *Bryan* received notice that the injury was work related, and notice was not an issue in that case.

that a claim for compensation may not be filed more than two years after the date of the last payment made *under the chapter*. Our analysis considers only the date of the last payment made "under this chapter." The fact that Fuqua Homes' insurer "specifically told [Dungan] to seek care on his own" does not change our analysis, as Dungan does not allege fraud or even that Fuqua Homes specifically represented that it would pay for his 2010 treatment.

We also find *Brown v. Ozark Christian Schools of Neosho*, 847 S.W.2d 888 (Mo. App. S.D. 1993), helpful to our analysis of the issue presented in this case. Although *Brown* is factually distinguishable from the present case, we find the court's analysis of section 287.430 instructive. In *Brown*, the court addressed the issue of whether an employer's payments on the bill for an employee's funeral were payments "made under this chapter on account of the . . . death" of the employee, within the meaning of section 287.430. 847 S.W.2d at 894. The employer argued that it was not its intention to make payments on the funeral bill "under the provision of the workers' compensation law"; rather, the payments were gratuitous. *Id.* at 894-95. The court held that the intent of the employer in paying for the funeral was "immaterial in determining whether the claim was timely," and that because the employer was *required* by the Workers' Compensation Law to pay the reasonable expense of the employee's burial, payment of that bill tolled the statute of limitations under section 287.430. *Id.* at 896.

In discussing the effect of the 1980 and 1981 amendments to section 287.430, the *Brown* court was mindful of the general rules for analyzing the effect of an amendment, i.e., that "a change in a statute is ordinarily intended to have some effect, and the General Assembly will not be charged with having done a meaningless act," and the "legislature is presumed to know the judicial construction of a prior act so that an amendment substituting new language for that previously construed indicates that a different interpretation should be given to the new

7

language." *Id.* at 895. The court determined that by enacting the 1981 amendment of section 287.430, which restored the provision regarding payments "made on account of the injury or death" and added the phrase "under this chapter," the legislature "meant to make it clear that only a payment of an obligation created by the [Workers' Compensation] Law would extend the period of limitation" set forth in section 287.430. *Id.* Accordingly, the court explained, an employer's purchase of groceries for an injured employee or payment of rent directly to a landlord for the benefit of an injured employee would not extend the period of limitation. *Id.* Rather, "[o]nly payment of an obligation created by the [Workers' Compensation] Law would do so." *Id.*; *see also Bryan*, 847 S.W.2d at 188 (finding that *Brown* stood for the proposition that because the payments were made by a party having an obligation "under this chapter," the payments were made "under this chapter").

Dungan contends that *Bryan* predates the strict construction requirement of section 287.800,[6] "making it questionable that the case remains authoritative." Dungan argues that, in effect, *Bryan* reads the words "employer" and "insurer" into the statute. He contends that "[i]t is only by violating the mandate to strictly construe the statute that 'employer' or 'insurer' can be added to the provision," and that if the legislature had intended that only payments made by the employer or the insurer would toll the statute of limitations in section 287.430, the statute would include those terms. We reject Dungan's argument. The interpretation of section 287.430 adopted in *Bryan* does not require that the words "employer" or "insurer" be read into the statute. Rather, it simply acknowledges that the phrase "under this chapter" refers to obligations created by the Workers' Compensation Law. Thus, the strict construction mandate of section 287.800

---

[6] Section 287.800.1, as amended in 2005, provides that "[a]dministrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, and any reviewing courts shall construe the provisions of this chapter strictly." Prior to the statute's amendment in 2005, the statute mandated liberal construction of the provisions of the Workers' Compensation Law.

8

does not affect the analysis in *Bryan*, and *Bryan* remains controlling on the issue of whether payment of an employee's medical bills by a party not obligated to make such payments constitutes "payment made under this chapter" within the meaning of section 287.430.

Relying on other language in Chapter 287, Dungan offers two additional arguments as to why the phrase "under this chapter" should be read broadly to include payments made by the employee or his personal insurer.[7] First, Dungan claims that section 287.140.1[8] supports his argument that payment under Chapter 287 on account of the injury may be made by an employee or someone other than the employer or employer's insurer. Specifically, Dungan cites the provision of 287.140.1 that "[i]f the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense." He argues that this provision gave him "a statutory right to select his own physician, with the concomitant obligation to make payment, all on account of his injury." We find that Dungan's reliance on section 287.140.1 is misplaced. Section 287.140.1 "requires an employer to provide an injured employee medical care but allows the employer to select the medical provider." *Pruett v. Federal Mogul Corp.*, 365 S.W.3d 296, 307 (Mo. App. S.D. 2012). The statute simply provides that if an employee so chooses, he has the right to select his own health care providers at his own expense. As Fuqua Homes points out, the statute does not place an obligation on the employee to pay "under the chapter" as it does on the employer. Consequently, we find that an employee's option to select

---

[7] Because the language upon which Dungan relies was in Chapter 287 when *Bryan* was decided, Dungan is, in effect, asking us to overturn the analysis of *Bryan*. This we refuse to do. We will, however, address the substance of his arguments.

[8] Section 287.140.1 provides, in pertinent part:

> In addition to all other compensation paid to the employee under this section, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement's at his own expense.

9

his own medical provider at his own expense does not bring any payments made by the employee or his personal insurer for such treatment within the ambit of payments made "under this chapter" in section 287.430.

Next, Dungan argues that the phrase "under this chapter" is used broadly in other sections of the Workers' Compensation Law[9] and is "not limited to 'obligations' of the employer like the *Bryan* court suggested." Based on these other uses of the phrase within the Workers' Compensation Law, Dungan contends:

> The reasonable construction of the Legislature's intent is that as long as there is a compensable accident and injury as defined by § 287.020, and there is notice to the employer, all transactions that follow, whether engaged in by the Division, the Fraud Unit, the Fund, the employer or the employee, are "under this chapter," including the employee's payment for treatment once he is told he is on his own.

In determining legislative intent, we consider the context in which the language of the statute is used and the "'problem the legislature sought to address with the statute's enactment,'" and we "'construe the statute in light of the purposes the legislature intended to accomplish.'" *State ex rel. Whiteco Indus., Inc. v. Bowers*, 965 S.W.2d 203, 207 (Mo. App. E.D. 1998) (quoting *Wilson v. Dir. of Revenue*, 873 S.W.2d 328, 329 (Mo. App. E.D. 1994)). A phrase used more than once in a statutory scheme may have different meanings depending on the context in which it is used. *See Cunningham v. Bd. of Aldermen of City of Overland*, 691 S.W.2d 464, 468 (Mo. App. E.D. 1985) ("We have no problem finding that the two words [in a city's zoning ordinances] should not be given the same meaning in . . . two different contexts."). "It is not

---

[9] Dungan cites section 287.266.6 (referring to the Medicaid program's "right to recover the full amount of its payments when payments are made to a provider under this chapter"); section 287.128.9 (referring to fraud unit investigations "for any violation under this chapter"); section 287.220.14 (referring to "awards issued under this chapter affecting the second injury fund"); section 287.400 (referring to the obligation of the Division to "inform the employee generally of his rights under this chapter"); sections 287.520.1 and 287.520.2 (referring to serving notices "required under this chapter"); section 287.640.1 (referring to the Division's administrative law judges' and employees' "salaries, expenses and costs under this chapter"); and section 287.660.1(5) (referring to the Division's "fees and charges allowed or required to be collected under this chapter"). The phrase "under this chapter" appeared in all of these provisions, other than sections 287.128.9 and 287.220.14, when *Bryan* was decided.

logical or necessarily inferable that the same words used elsewhere [in a statutory scheme] are used interchangeably with exactly the same intent . . . ." *Id.* "[S]tatutory construction must be made on the basis of the wording *in the context* in which it occurs." *Id.*

As previously discussed, we find that the legislature's intent in including the phrase "under this chapter" in section 287.430 was to limit what constitutes payment for purposes of tolling the statute of limitations to payments made by parties with an obligation to make payments under Chapter 287. The fact that the phrase "under this chapter" is used in completely different contexts in other sections of the Workers' Compensation Law does not change our interpretation of the phrase in the context of section 287.430.

We also note that if we were to interpret section 287.430 as Dungan suggests, an employee could extend the statute of limitations for filing a claim for compensation indefinitely simply by continuing to make payments for medical bills, rendering section 287.430 without a statute of limitations for all practical purposes. We find that such a scenario does not comport with the legislative intent of the statute.

We hold that payments made by Dungan or his insurer do not constitute payments made "under this chapter" within the meaning of section 287.430 because, as in *Bryan* and *Brown*, neither Dungan nor his insurer were obligated to make such payments under the Workers' Compensation Law. Thus, any payments made by Dungan or his insurer did not toll the statute of limitations set forth in section 287.430. Because the last payment made by Fuqua Homes' insurer was on February 19, 2009, and Dungan did not file his claim for compensation until October 31, 2011, more than two years after the last payment was made under Chapter 287 on account of the injury, Dungan's claim is not timely, and the Commission did not err in issuing its

11

Final Award Denying Compensation. The Final Award of the Labor and Industrial Relations Commission is affirmed.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.