

# In the Missouri Court of Appeals
# Western District

MILTON YOUNG, )
             Respondent, )
v. ) **WD76567 Consolidated with**
              ) **WD76568**
BOONE ELECTRIC COOPERATIVE, ) OPINION FILED: **April 14, 2015**
             Appellant, )
              )
TREASURER OF THE STATE OF )
MISSOURI CUSTODIAN OF THE )
SECOND INJURY FUND, )
              )
             Respondent. )

### Appeal from the Labor and Industrial Relations Commission

**Before:** Alok Ahuja, Chief Judge, Presiding, and Joseph M. Ellis, Victor C. Howard, Thomas H. Newton, Lisa White Hardwick, James E. Welsh, Mark D. Pfeiffer, Karen King Mitchell, Cynthia L. Martin, Gary D. Witt and Anthony Rex Gabbert, Judges

In this consolidated appeal, Boone Electric Cooperative ("Boone Electric") seeks review of two decisions of the Labor and Industrial Relations Commission ("Commission"). Boone Electric contends that the first decision, which awarded workers' compensation benefits to Milton Young ("Young") for a 2008 injury to his left knee, was erroneous because Young's injury did not arise out of his employment. Boone Electric argues that the second decision, which awarded benefits to Young for a 2009 injury to his

right shoulder, was erroneous because the incident was not a compensable accident under the Workers' Compensation Law. [1] For reasons explained herein, we affirm the Commission's awards for the two injuries.

## FACTUAL AND PROCEDURAL HISTORY

Young began working as an electrical lineman for Boone Electric Cooperative in 1987. Young's duties as a lineman included electrical wire installation and repair, both overhead and underground. In that capacity, Young's work has included building and repairing power lines and running new electric services to homes and businesses. His job involves climbing poles, pulling and jacking wire in, and crimping it. Most of Young's work is strenuous, and everything is done with arms reaching out and stretching, mostly shoulder high.

### Knee Injury

On January 4, 2008, Young injured his left knee while working at a job site. Young was walking back to his work truck to retrieve materials when he stepped on a "frozen dirt clod" and his left knee "buckled and popped," causing him to fall to the ground. Young's knee popped again when two other linemen on his crew helped him to his feet. As a result of the January 4, 2008 incident, Young sustained a sprain to his left knee.

### Shoulder Injury

Young began his workday October 2, 2009 with a safety meeting. As part of that meeting, Young performed an exercise called a "pole rescue." During that exercise, he

---

[1] Section 287.010 provides that Chapter 287 shall be known as the "Workers' Compensation Law."

climbed a utility pole by using a tool belt with a "safety," cut loose a 180-pound dummy, lowered the dummy to the ground with a rope and hand line, and climbed back down. Young completed that exercise without incident or problem.[2]

Later that day, Young was running electric service to a building and needed to step up on a platform to access a 2,500-pound reel of wire on the truck. When the outriggers are down to stabilize the truck, as they were at that time, the step getting up into the truck is approximately twenty-seven inches off of the ground.[3] The step is so high because the trucks are never on level ground, and the outriggers are used to level and stabilize the truck so the bucket can be lifted properly to raise the worker up to where the lines are located on the pole. There are two handles designed to allow a person to pull up onto the step, and both are needed to keep balance. As Young was pulling himself up, he felt a "pop" in his right shoulder. After that, he could not raise his arm. Young's doctor testified that the "pop" that Young heard was the sound of things tearing in his shoulder. As a result of the October 2, 2009 incident, Young sustained a right shoulder glenoid labral tear, partial biceps and subscapularis tears, and a full-thickness supraspinatus tear.[4]

On December 9, 2009, Young filed workers' compensation claims against Boone Electric for both the January 4, 2008, and October 2, 2009, injuries.[5] Following a

---

[2] At the time of his shoulder injury in 2009, Young was approximately age 53. Prior to October 2, 2009, Young had only occasional pain or soreness in his shoulders and had never received any medical treatment for that soreness. X-rays on both shoulders taken in 2004, the only occasion where x-rays were taken prior to the incident at bar, were interpreted as "unremarkable."

[3] By way of visualization, a standard step is approximately eight inches high, and a standard desk is approximately thirty inches tall.

[4] Boone Electric presented the testimony of two doctors whose testimony the Commission deemed not credible.

[5] Young also filed claims against the Second Injury Fund, but those claims are not relevant to the instant appeal.

hearing, an Administrative Law Judge ("ALJ") awarded benefits on both claims. Boone Electric appealed the ALJ's decisions to the Commission. In supplemental opinions, the Commission affirmed the ALJ's decision to award benefits on both of Young's claims.[6] Boone Electric appeals the Commission's decisions, which we have consolidated for review.[7]

Further facts are set forth below as necessary.

## STANDARD OF REVIEW

This court will not disturb the decision of the Commission on appeal unless it acted without or beyond its power, the award was procured by fraud, the facts do not support the award, or the award is not supported by sufficient competent evidence in the record. § 287.495.1.[8] "We examine the whole record to determine the sufficiency of the evidence." *Marmon v. City of Columbia,* 129 S.W.3d 921, 924 (Mo. App. W.D. 2004) (citation omitted). If we find the award is contrary to the overwhelming weight of the evidence, then it is not supported by substantial evidence and we must reverse it. *Id.* In making this determination, "[w]e do not reweigh the evidence; the Commission is the judge of the weight to be given to conflicting evidence and the credibility of the witnesses." *DeLong v. Hampton Envelope Co.*, 149 S.W.3d 549, 554 (Mo. App. E.D. 2004) (citations omitted).

---

[6] The Commission modified the ALJ's award for Young's 2009 injury by reducing the amount from 35 percent permanent partial disability at the right shoulder to 30 percent permanent partial disability at the right shoulder. Young does not challenge that reduction on appeal.

[7] Young filed a Motion for Attorney Fees pursuant to Rule 84.19, arguing Boone Electric's appeal is frivolous. Young's motion, which was taken with the case, is hereby denied.

[8] All statutory references are to RSMo 2000 as currently supplemented, which encompasses several amendments from 2005 that apply to this case. Some sections were subsequently amended, but those amendments are not germane to our analysis herein.

However, "[t]he Commission's interpretation and application of the law . . . are not binding on this court and fall within our realm of independent review and correction." *Snyder v. Consol. Library Dist. No. 3*, 306 S.W.3d 133, 136 (Mo. App. W.D. 2010) (citation omitted). We thus review the questions of law presented in this appeal *de novo*.

**POINT I**

In its first point, Boone Electric contends that the Commission erred in awarding Young benefits for his 2008 knee injury because Young failed to prove that the accident arose out of his employment.

Under the Missouri Workers' Compensation Law ("Act"), an employer "shall be liable, irrespective of negligence, to furnish compensation under the provisions of [the Act] for personal injury . . . of the employee by accident . . . arising out of and in the course of the employee's employment." § 287.120.1.

Section 287.020.3(2) governs whether an injury arises out of and in the course of employment, and states:

> (2) An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
>
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

In the present case, Boone Electric does not challenge the Commission's finding that the 2008 accident was the prevailing factor in causing Young's knee injury. Rather,

5

Boone Electric confines its argument under Point I to the application of Section 287.020.3(2)(b). Boone Electric argues that Young failed to prove that the risk from which his injury arose — slipping on a frozen clod of dirt — was related to his employment. In support of its argument, Boone Electric cites two recent decisions in which injuries were held not to have arisen out of the claimants' employment.

First, in *Miller v. Missouri Highway & Transportation*, 287 S.W.3d 671 (Mo. banc 2009), the claimant was walking on a work site "when he felt a pop and his knee began to hurt." *Id.* at 672. "He frankly admit[ted] . . . that *nothing about the road surface . . . caused any slip, strain or unusual movement . . . .*" *Id.* (emphasis added). On appeal, our Supreme Court made it clear that, under the 2005 amendments to the Act: "An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved — here, walking — is one to which the worker would have been exposed equally in normal non-employment life." *Id.* at 674. Thus, in affirming the Commission's denial of benefits, the Court held that the claimant's injury did not arise out of employment because it did not occur "due to being in an unsafe location due to his employment." *Id.* Rather, the claimant was "walking on an even road surface when his knee happened to pop." *Id.*; *see also Pope v. Gateway to W. Harley Davidson*, 404 S.W.3d 315, 320 (Mo. App. E.D. 2012) ("In *Miller,* the employee was simply walking on an even road when his own physiology caused his knee to pop. There was no evidence that anything about his work increased his risk of his knee popping.").

6

Second, in *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504 (Mo. banc 2012), the claimant was making a pot of coffee in the break room of her workplace when she turned and fell off the side of her sandal, injuring her right hip. *Id.* at 506. "There were no irregularities or hazards on the kitchen floor. The floor was not wet, and there was not any trash on the floor." *Id.* Therefore, because the only connection between the claimant's injury and her employment was the fact that the injury "occurred in her office's kitchen," our Supreme Court held that the claimant's injury did not arise out of her employment. *Id.* at 511–12.

"Together, *Miller* and *Johme* stand for the proposition that an unexplained injury is not compensable merely because the injury occurred at work." *Dorris v. Stoddard Cnty.*, 436 S.W.3d 586, 592 (Mo. App. S.D. 2014). "[W]e consider whether [the claimant] was injured *because* he was at work as opposed to becoming injured merely *while* he was at work." *Pope*, 404 S.W.3d at 320. Thus, because we find that Young was injured because he was at work, Boone Electric's reliance on *Miller* and *Johme* is misplaced.

In *Duever v. All Outdoors, Inc.*, 371 S.W.3d 863 (Mo. App. E.D. 2012), a case squarely on point, but not cited by either party, the claimant was the owner and operator of a landscaping company. *Id.* at 865. The claimant was injured when he slipped on a piece of ice in the parking lot of his office on his way back inside after holding a safety demonstration in the lot. *Id.* In affirming the Commission's award of benefits, this Court stated that the facts before it were "clearly distinguishable" from those in *Miller* and *Johme* because the claimant "sustained an injury due to an unsafe condition (the ice

7

itself)," the claimant was in the icy parking lot "as a function of his employment," and, therefore, the claimant was exposed to the risk of slipping on the ice because of his employment. *Id.* at 867–68.

Here, as in *Duever*, there was evidence that Young's injury was caused by an unsafe condition on the ground of the work site — the frozen dirt clod. Moreover, Young was at the work site because of his employment and, therefore, was exposed to the risk of slipping on the frozen dirt clod because of his employment. Accordingly, the risk from which Young's injury arose was related to his employment.

Boone Electric also asserts that Young's injury did not arise out of his employment because he lives on a farm and, thus, was "equally exposed to clods of dirt" in his nonemployment life. However, as recently explained in *Dorris*, under the Act's strict construction, Section 287.020.3(2)(b)'s "hazard or risk" cannot be identified so generally. In *Dorris*, the claimant was injured when she tripped on a crack in the street while walking back to her office after completing a work-related task offsite. *Id.* at 588. On appeal, the employer argued that the Commission erred in awarding benefits because the claimant was equally exposed to the risk of cracks in a street in her nonemployment life. *Id.* at 590. Rejecting the employer's argument, this Court first stated that, by dismissing a similar argument in *Duever*, we "implicitly determined the hazard was not the hazard of slipping on ice in general, but the hazard of slipping on that ice in that particular parking lot." *Id.* at 592. Thus, identifying the "specific risk or hazard" the claimant was exposed to as "cracks in [the] particular street" she tripped on, and finding that "[t]here [was] no evidence in the record that [the] [c]laimant had any exposure to [t]hat particular hazard

8

during her nonemployment life," the *Dorris* Court held that "the record could not support a conclusion by the Commission that [the claimant] was equally exposed to that hazard in her nonemployment life, as urged by employer." *Id.*

Similarly, here, even assuming *arguendo* that Young was exposed to the hazard of slipping on frozen dirt clods in his nonemployment life, his injury still arose out of his employment because there is nothing in the record to support a conclusion that he was equally exposed to the hazard of slipping on frozen dirt clods at that particular work site in his nonemployment life.[9]

For all the reasons stated above, Young's injury arose out of and in the course of his employment. Accordingly, the Commission did not err in awarding Young benefits for his 2008 knee injury.

This point is denied.

---

[9] In its final award allowing compensation for the 2008 injury, the Commission stated:

> [W]e ask whether the record contained evidence sufficient to warrant a finding that employee was equally exposed to the risk of stepping on a frozen dirt clod and falling in his normal nonemployment life. Employer fails to identify such evidence in its brief . . . .

Boone Electric argues that, by stating that "[e]mployer fails to identify such evidence," the Commission "improperly placed the burden upon [Boone Electric in its equal exposure analysis]." We disagree.

A claimant is not required to prove both that the hazard from which her injury arose was related to her employment *and* that the hazard was one which she was not equally exposed to in her nonemployment life. Rather, the claimant has the burden of proving that her injury "was caused by [a] risk related to her employment activity *as opposed to* a risk to which she was equally exposed in her 'normal nonemployment life.'" *Johme*, 366 S.W.3d at 512 (emphasis added). Meaning, implicit in a finding that the claimant was exposed to the risk from which her injury arose *because* of her employment, is a finding that the claimant could have avoided the risk outside of her employment.

Here, Young established that his injury arose from the hazard of slipping on the frozen dirt clod, and because Young's employment exposed him to that hazard, he proved that the hazard was related to his employment. Thus, by stating that Boone Electric failed to identify any evidence of equal exposure, the Commission did not place the burden on Boone Electric to prove that Young's injury arose out of his employment. Instead, the Commission was merely stating that Boone Electric failed to point to any evidence tending to disprove the prima facie case *already made by Young*.

9

## POINT II

In its second point, Boone Electric contends that the Commission erred in awarding Young benefits for his 2009 shoulder injury because Young failed to prove that an accident in fact occurred. The question is whether Young suffered an "accident" as defined in Section 287.020.2. Understanding why we affirm the Commission on this point entails application of the statutory definition of "accident," created by the 2005 amendment to the Act, to the facts surrounding Young's shoulder injury.

### The Legislature expressly rejected and abrogated all earlier case law interpretations on the meaning of or definition of "accident"

In this issue of first impression, we begin by noting that, as part of the 2005 amendments, the Legislature expressly stated its "intent to reject and abrogate earlier case law interpretations on the meaning of or definition of 'accident' . . . to *include, but not be limited to*, holdings in *Bennett v. Columbia Health Care and Rehabilitation*, 80 S.W.3d 524 (Mo. App. W.D. 2002) . . . and all cases citing, interpreting, applying, or following [that] case[]." § 287.020.10 (emphasis added).

Because interpretation of the term "accident" as used in the amended statute is an issue of first impression[10] and because the Legislature abrogated all earlier case law interpretations of the term "accident," we are without decisive precedent on which to rely on this matter.

---

[10] The issue of statutory interpretation of the meaning of the term "accident" is not raised in the Point Relied On. This court would be within its discretion to deem the point abandoned and dismiss this point on appeal. *Lanham v. Div. of Employment Sec.*, 340 S.W.3d 324, 327 (Mo. App. W.D. 2011). Because we prefer to decide cases on the merits and despite the deficiencies we are able to ascertain the arguments from the briefs, we proceed to the merits. *Randolph Co. v. Moore-Ransdell,* 446 S.W. 3d 699, 704 n.3 (Mo. App. W.D. 2014).

## General Principles of Statutory Interpretation

The "primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *In re Boland*, 155 S.W.3d 65, 67 (Mo. banc 2005) (citation omitted). "If statutory language is not defined expressly, it is given its plain and ordinary meaning, as typically found in the dictionary." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009) (citation omitted). We presume "every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language." *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013) (citation omitted). When the words of a statute are clear, "there is nothing to construe beyond applying the plain meaning of the law." *State ex rel. Valentine v. Orr*, 366 S.W.3d 534, 540 (Mo. banc 2012) (citation omitted). We "'will look beyond the plain meaning of the statute *only when* the language is ambiguous or would lead to an absurd or illogical result.'" *In re DeBrodie*, 400 S.W.3d 881, 884 (Mo. App. W.D. 2013) (emphasis added; citations omitted). "A statute is ambiguous when its plain language does not answer the current dispute as to its meaning." *Id.* (citation omitted). "We presume the legislature intended what the statute says, and if the statutory language is clear, 'there is no room for construction beyond the plain meaning of the law.'" *Treasurer of State v. Stiers*, 388 S.W.3d 217, 219 (Mo. App. W.D. 2012) (citation omitted).

Put another way, "[p]roper statutory construction starts with the words of the statute." *In re M.D.R.*, 124 S.W.3d 469, 472 (Mo. banc 2004). "In most cases, it ends there, as well." *Id.* "*If the words of the statute are unclear or ambiguous*, the Court *may*

review the earlier versions of the law, or examine the whole act to discern its evident purpose, or consider the problem that the statute was enacted to remedy." *Id.* (emphases added; citation omitted).

**Under the Act's plain language, Young's workplace injury constitutes an "accident"**

As noted above, an employer is "liable, irrespective of negligence, to furnish compensation under the provisions of [the Act] for personal injury . . . of the employee by accident . . . arising out of and in the course of the employee's employment." § 287.120.1. Section 287.020.2 defines "accident" as "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. . . ." We are asked to decide whether Young suffered "an unexpected traumatic event or unusual strain."

In so doing, we note that in addition to general principles of statutory interpretation, the Legislature's 2005 amendments mandate that we construe the Workers' Compensation law strictly. § 287.800.1. "Strict construction of a statute presumes nothing that is not expressed." *Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo. App. W.D. 2010) (citation omitted). "The rule of strict construction does not mean that the statute shall be construed in a narrow or stingy manner, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used." *Allcorn v. Tap Enters., Inc.,* 277 S.W.3d 823, 828 (Mo. App. S.D. 2009) (citing 82 C.J.S. *Statutes* § 376 (1999)). "The clear, plain, obvious or natural import of the language should be used, and the statutes should not be applied to situations or parties

12

not fairly or clearly within its provisions."  *Id.* (quoting 3 SUTHERLAND STATUTORY CONSTRUCTION § 58:2 (6th ed. 2008)).

The Commission's findings are in accordance with a plain reading of the relevant statutory language:

> As will be seen in more detail below in our discussion of the issue of medical causation, the "pop" was not the injury itself, but rather merely a tangible manifestation to employee of a problem inside his shoulder.  We are convinced that the employee suffered an accident, because despite the fact employee had pulled himself up onto the truck many times before, *this time* he felt a pop in his shoulder, and *this time* he was unable to lift his arm afterward.  We believe that these facts constitute the "unexpected traumatic event or unusual strain" required under the law.  We conclude that employee suffered an accident for purposes of § 287.020.2.

The words "unexpected traumatic event or unusual strain" are clear and unambiguous.  As noted above, it is a cardinal rule of statutory construction that we afford words not defined by the Legislature their plain and commonly understood meaning --often a meaning found in the dictionary.  *Derousse*, 298 S.W.3d at 895.   It is also a cardinal rule of statutory construction that we presume the Legislature does not employ superfluous or meaningless language.  *Bateman*, 391 S.W.3d at 446.  This point is particularly evident in this case because of the Legislature's edict that the courts shall not look to prior court opinions interpreting this statute, but focus instead on the words they used.  § 287.020.10.

Taken apart, the beginning of the definition of "accident" describes two categories: (1) "unexpected traumatic event," or (2) "unusual strain."[11]  Neither phrase is defined in

---

[11] The use of the word "or" constitutes a disjunctive meaning; if an event falls under either category, this is sufficient to constitute an "accident" under the statute.  *See Renner v. Dir. of Revenue*, 288 S.W.3d 763, 766 (Mo. App. E.D. 2009).

the statute. In arriving at their intended definitions, we are required to presume that the phrases are not redundant, and have distinct meanings. *Id.* (holding that we presume "every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language"). In other words, "unusual strain" is not synonymous with, or redundant of, "unexpected traumatic event." Rather, "unusual strain" is a category unto itself, distinguishable from "unexpected traumatic event." Nonetheless, it is possible that a particular "strain" or "event" could fall within both categories; it is compensable if it falls under a single category. *Williams v. Dir. of Revenue,* 446 S.W.3d 272, 273 (Mo. App. E.D. 2014) (statute that defined "vehicle" as "designed primarily for use, or is used on highways" encompasses both a car which is designed for use on a highway, whether it was on a highway or not, as well as a golf cart, which was not designed for use on the highway, but was in fact used on a highway).

Because we find that Young's shoulder injury fits within the category of "unusual strain," we do not have to reach the issue of whether it likewise fits within the category of an "unexpected traumatic event."

With this starting point, we turn to the dictionary to locate common meanings:

"Unexpected": "Unforeseen." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993, Unabridged) at 2494.

"Traumatic": "Of, relating to, or resulting from a trauma." "Trauma" is defined as: "1 : an injury or wound to a living body caused by the application of external force or violence <injuries . . . such as sprains, bruises, fractures, dislocation, concussion -- indeed *traumata* of all kinds -- *Lancet*>".; "2 a : a psychological or emotional stress or blow that may produce disordered feelings or behavior"; "[2] b : the state or condition of mental or

14

emotional shock produced by such a stress or by a physical injury." *Id.* at 2432.[12]

"Event": "Something that happens." *Id.* at 788.

"Unusual": "Being out of the ordinary." *Id.* at 2514.

"Strain": "2 a : to exert (as oneself) to the utmost : put great stress or effort : use or cause to function with extreme vigor. . . b : to injure (as oneself or a body part) by overuse or misuse" (when used as a verb). "An act of straining or the condition of being strained: as 1 a: excessive physical or mental tension . . . b : excessive or difficult exertion or labor : a violent or overtaxing effort c : A hurt or injury of a body part or organ resulting or such as results from excessive tension, effort or use" (when used as a noun, as is the case here). *Id.* at 2255.

Employing these common meanings, an "accident" requires either: (1) an unforeseen happening relating to or resulting from a physical wound ["unexpected traumatic event"], or (2) an unordinary act of excessive physical or mental tension, difficult exertion, or a violent or overtaxing effort ["unusual strain"].

Applying the second plain meaning of "accident," it is evident that in pulling his weight up as high as twenty-seven inches, Young plainly sustained an act of excessive physical tension -- that is to say, Young suffered an "unusual strain." The varying nature of the ground and the necessity of having the truck stable and level result in this unavoidably high step -- roughly the equivalent of stepping onto a standard-height desk or kitchen table in one movement -- such that Young had to use two handles and careful balance to pull up the weight of his entire body and any tools in his belt. In the course of this action, Young suffered an "unusual strain" so as to meet Section 287.020.2's

---

[12] While this dictionary definition includes descriptions of mental injuries, the Legislature has placed additional restrictions on the application the Workers' Compensation Law to mental injuries in sections 287.120.8 and 287.120.9.

definition of "accident." The Commission correctly recognized this: "the employee suffered an accident, because despite the fact employee had pulled himself up onto the truck many times before, *this time* he felt a pop in his shoulder, and *this time* he was unable to lift his arm afterward."

## Young did not need to establish an external cause of his injury

In our holding, we reject Boone Electric's argument that Young did not establish that his accident was ***caused by*** an "unexpected traumatic event" or an "usual strain." Boone Electric argues that Young "was merely getting into the truck as he had done many times before when he heard the pop. [Young] getting into his truck was a routine procedure and there is no evidence that there was any trauma or duress associated with him entering the truck." In essence, Boone Electric argues that this could not be an "unexpected traumatic event or unusual strain" because Young had to take the same actions every time he entered his truck when the outriggers were in use. However, repeated unusual strain does not make it usual; it merely makes it repeated.

Once a claimant has established an "unexpected traumatic event" or an "unusual strain," the balance of the statutory definition of "accident" requires proof of the following additional criteria: (1) the "accident" must be identifiable by time and place of occurrence; (2) the "accident" must produce at the time objective symptoms of an injury; and (3) the "accident" must be caused by a specific event during a single work shift. § 287.020.2.

Boone Electric does not contest that Young's injury was identifiable by time and place of occurrence, and that it produced at the time objective symptoms of an injury.

16

Nor does Boone Electric contest that the injury occurred during a single work shift. The only portion of the statute that Boone Electric's argument implicates is the term "caused by a specific event." Although its argument is not fully developed, Boone Electric appears to contend that the Act's definition of "accident" requires something distinguishable from and in addition to routine work, such as a precursor event (e.g. a rabid dog on the chase)[13] or an external force (e.g. a slip and fall). But succeeding in that argument requires reliance on case law that was either specifically abrogated by the 2005 amendments to the Act or case law that interpreted a completely different provision of the Act addressing hernia injuries. More to the point, the argument unnecessarily contorts and disregards the plain meaning of the phrase as it is ***currently enacted*** in this statute.[14]

---

[13] Appellants argue in their brief that an example of an "unexpected traumatic event" would be an employee who injured his shoulder while rushing to get into a truck because he was being chased by a rabid dog.

[14] The Dissent marches the reader through a long line of precedent studiously tracing the history of Missouri's workers' compensation cases since its 1929 inception in an effort to establish that Young's injury does not fit within the meaning of an "unusual strain." This is a curious exercise as there is no meaningful assertion by the parties that the words of the statute as written or as applied to these facts are unclear or ambiguous. As noted above, "[w]e presume the legislature intended what the statute says, and if the statutory language is clear, 'there is no room for construction beyond the plain meaning of the law.'" *Stiers*, 388 S.W.3d at 219. The Dissent cites a treatise in support of its contention that the term "unusual strain" has been interpreted differently in different jurisdictions and thus is ambiguous. Dissent at n.5. A treatise is no substitute for careful examination of the actual language enacted by our Legislature. Thus, the Dissent's painstaking research jumps past our first obligation, to interpret the statute as written.

The Dissent's research can be separated into four rough categories. The beginning demarcation of the research is what the Dissent describes as a liberal interpretation of an early version of the Act, rejected by *Hussman-Ligonier Co. v. Hughes*, 153 S.W.2d 40 (Mo. 1941), separated by forty years by *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983), and capped off by *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo. App. W.D. 2002), which the Legislature specifically abrogated in 2005.

The Dissent attempts to show that that it is "obvious" the Legislature employed the term "unusual strain" to "restore" or "resurrect" the second of the four periods, or what it terms the "pre-*Wolfgeher*" line of cases. Dissent at 2, 11. In so doing, the Dissent notes accurately that "[w]hen the legislature enacts a statute referring to terms that have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." Dissent at 5 (quoting *Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 825-26 (Mo. banc 2014) (additional citations omitted)). And this holding from *Balloons* forms the platform of the Dissent's lengthy analysis.

Neither the number of cases cited by the Dissent nor the presumption noted in *Balloons* overcomes the Legislature's 2005 language explicitly requiring us to reject and abrogate earlier judicial interpretations on the meaning of or definition of "accident," ***including but not limited*** to *Bennett*. There is no qualifying language on the blanket abrogation of prior judicial precedent, nor is there any language directing us to the "pre-*Wolfgeher*" line of analysis. Notably, the Legislature did not abrogate the *Wolfgeher* case in particular. If the Legislature had desired to

17

Again employing the dictionary, "specific" means "3 : restricted by nature to a particular individual, situation, relation, or effect : PECULIAR." WEBSTER'S at 2187. "Event," as noted, means "something that happens." *Id.* at 788. In application, this plain meaning, coupled with the plain meaning of "unexpected traumatic event," or "unusual strain," requires proof of the following to establish an "accident" pursuant to Section 287.020.2:

> In the case of an "unexpected traumatic event":
>
> ***an unforeseen happening relating to or resulting from a physical wound*** [unexpected traumatic event], identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a ***particular happening*** [specific event] during a single work shift.
>
> In the case of an "unusual strain":
>
> ***an unordinary act of excessive physical or mental tension, difficult exertion, or a violent or overtaxing effort*** [unusual strain], identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a ***particular happening*** [specific event] during a single work shift.

In the case of an "unexpected traumatic event," the traumatic event leading to injury will be the "particular happening," or "specific event" to which the injury can be plainly connected. In the case of an "unusual strain," the "particular happening" linked to the injury need not be traumatic, or accidental, but need only be identifiable: a "particular happening." In either case, the requirement of a "specific event" operates to

refer us to the pre-*Wolfgeher* line of reasoning or to any other case or line of cases in particular, the Legislature is well aware of how to do so. In fact, this very statute clearly shows that the Legislature knows exactly how to direct the courts to a particular case or line of cases.

The Legislature did not direct us to restore an unidentified line of cases; the Legislature instead directed us not to resort to prior interpretations and to determine the plain meaning of the words of the statute. To hold differently would be a judicial choice to disregard the plain language of the 2005 amendments abrogating all earlier case law interpreting the meaning of the word "accident."

preclude recovery for complaints or injuries that cannot be isolated to a "particular happening" or "specific event." Rather, from the context of the statute, it is evident that the Legislature employed the term "specific event" to clarify that an "accident" must occur "during a single work shift," a phrase necessary to exclude, e.g., injuries *caused by* occupational diseases acquired over time, including injuries that result from the repetitive routine performance of work, which are addressed separately in Section 287.067. *Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293, 301 (Mo. App. E.D. 2013). To reiterate, repeated unusual strain does not make it usual; it only makes it repeated.[15]

---

[15] Again, we take stock of the Dissent's arguments that the Commission should be reversed on this point because the accident must cause the injury. The Dissent posits that separate, arguably similar provisions from other sections of the Act support reversal, including the hernia statute and a section relating to mental stress. Understanding why the Dissent's argument is misplaced on this point is evident in examining *McClain v. Yellow Cab Co.*, 439 S.W.2d 200 (Mo. App. S.D. 1969), a case the Dissent relies on that interprets the Act's hernia provision. In *McClain*, the Southern District of our court determined that the fact of a hernia was not, in and of itself, proof of a workplace strain under the hernia statute. *Id.* at 205. The *McClain* court reached its conclusion in reliance on analysis "in other types of worker's compensation cases" that at the time were deciding that for an "unusual strain" to qualify as an "accident," the "usual strain" had to involve an accidental or external force outside the routine performance of one's work. *Id*. at 205. As *McClain* was decided in 1969, the "other" cases referred to would have been the pre-*Wolfgeher* line of cases. Additionally, *McClain's* reliance on "other types of worker's compensation cases" to define the phrase "unusual strain" as used in Section 287.195 was plainly erroneous. That statute requires a hernia claimant to demonstrate that his or her hernia resulted from "an accident or unusual strain." The use of the disjunctive "or" expressed legislative intent to create two distinct circumstances that could result in a hernia – an "accident" or an "unusual strain." The *McClain* court disregarded this fact. Instead, it effectively equated the terms "accident" and "unusual strain" when it looked to "other types of worker's compensation cases" that had attempted to figure out when and whether an "unusual strain" could fit within the statutory definition of "accident." *McClain* thus mistakenly relied on cases discussing whether "unusual strains" fell within the statutory definition of "accident" to define "unusual strain."

Additionally, as to the hernia statute, other cases have held that the "unexpected or abnormal strain *usually* results from the performance of work in an abnormal manner or in a manner not routine, but this is not necessarily so." *Pattengill v. Gen. Motors Corp.*, 845 S.W.2d 630, 632 (Mo. App. E.D. 1992) (overruled on other grounds) (citing *Wolfgeher*, 646 S.W.2d at 783). "Abnormal strain may also result from the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration." *Id.* In *Pattengill*, the Eastern District determined that a claimant had suffered an "unusual strain" where he had extended his arms above his head and stretched as far as he could reach, causing injury. "In determining whether an unusual strain occurred, we must focus 'on the fact that the injury has occurred rather than what act or force immediately preceded the injury.'" *Pattengill*, 845 S.W.2d at 632 (citations omitted). As an aside, we note that the Dissent recognizes *Pattengill* in stating that Section 287.195 "has been interpreted consistently with the pre-*Wolfgeher* case law." But *Pattengill* expressly relied on *Wolfgeher*, as this larger excerpt indicates:

> "[A]n unusual or abnormal strain may be classified as an accident even though not preceded by a slip and fall. The unexpected or abnormal strain usually results from the performance of work in an abnormal manner or in a manner not routine, but this is not necessarily

19

In application, the "specific event" requirement, afforded its plain meaning, couples with the separate requirement that an "accident" be identifiable by time and place of occurrence to require proof of a temporal (time), geographic (place), and causal (specific event) relationship to the injury. In Young's case, the particular happening was the act of grabbing the truck handles to hoist himself up onto a raised step or platform. This is consistent with the Legislature's motivation to ensure that "accidents" include only

so. Abnormal strain may also result from the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration." *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 783 (Mo. banc 1983); *accord Alexander v. Pin Oaks Nursing Home*, 625 S.W.2d 192, 193 (Mo. App. 1981) [("The law treats an abnormal strain as an accident and the resultant violence to the body as an injury within § 287.020. Work done in an awkward or unbalanced position, albeit in the execution of a regular assignment, which causes the employee to undergo a stress exceeding the usual and begets an unanticipated strain, results in a compensable injury.")]. *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 297 (Mo. 1965) [("An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall"; "The abnormal strain is the event and the injury is the result. The unexpectedness lies in the fact that force produces more strain than the employee has contemplated. This is true even though the force which caused the abnormal strain comes entirely from the physical exertion rather than from sources external to the body.")]. In determining whether an unusual strain occurred, we must focus "on the fact that the injury has occurred rather than what act or force immediately preceded the injury." *Viola v. Custom Coatings, Inc.*, 664 S.W.2d 266 (Mo.App.1984) *quoting Wolfgeher*, 646 S.W.2d at 267.

*Pattengill*, 845 S.W.2d at 632. Not only did the *Pattengill* court rely on *Wolfgeher*, it also provided no definitive language for the Dissent's assertion that we must interpret this statute in comparison to the claimant's normal routine work activities. In actuality, *Pattengill*'s facts are analogous to those in the case at bar in every relevant way, and its holding is in line with our opinion. *Pattengill* dispenses of the argument that there must be some sort of external cause or force preceding the injury in order for a claimant to recover by emphasizing that our focus is on the fact that the injury occurred rather than what preceded the injury. 845 S.W.2d at 632 (citing *Viola*, 664 S.W.2d at 267) (where claimant had sat in similar positions before in his job and testified that "nothing struck his leg nor did he hit it in any way at the time he was injured" nor did he "trip or fall over anything," the court held that "[t]he simple act of getting up from an awkward position was the medical cause of the tear to claimant's right medial meniscus.").

Regardless of the varying prior judicial interpretations of the hernia statute, there is a further compelling reason to look anew at the language the Legislature employed in its 2005 amendments rather than reflecting on inapposite statutes: "A phrase used more than once in a statutory scheme may have different meanings depending on the context in which it is used." *Dungan v. Fuqua Homes, Inc.*, 437 S.W.3d 807, 813-14 (Mo. App. W.D. 2014) (citation omitted). "It is not logical or necessarily inferable that the same words used elsewhere [in a statutory scheme] are used interchangeably with exactly the same intent. . . . " *Id.* (citation omitted). "Statutory construction must be made on the basis of the wording *in the context* in which it occurs." *Id.* (citation omitted). *Pattengill* emphasizes just how dangerous it is to transplant case law surrounding the usage of a term in one statute into another statute, and in any event, that case simply does not support the Dissent's rationale.

We are not persuaded that the Legislature's 2005 amendment's use of the term "unusual strain" was intended to direct us to prior select interpretations of the hernia provision (or of Section 287.120.8), particularly without any such indication from the Legislature. It is clear from the language in the 2005 amendments that directs us to the statutory interpretation of particular case law, that if the Legislature had intended for us to use a particular statutory interpretation from a particular prior case, it is well aware of how to do so.

20

those injuries directly connected to the work.  Because of the "specific event" provision, we reject any contention that the statute operates to narrow the intended meaning of "unusual strain" to require proof that an external, accidental force caused the injury.[16]

## Public policy supports our interpretation

Our holding is further supported by the longstanding public policy behind the Workers' Compensation Law.  Courts have long held that "[t]he purpose is to provide a simple and nontechnical method of compensation for injuries sustained by employees through accident arising out of and in the course of employment and to *place the burden of such losses on industry*."  *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 618 (Mo. banc 1977) (emphasis added).  "Innumerable decisions indicate that the law is intended to enable an injured employee to recover compensation and to do away with the common law defenses and disabilities."  *Id.*  Under Boone Electric's rationale, Young would prevail had he been negligent in not taking care to balance himself and thus slipped causing his injury, yet he could not recover where he took the action of properly balancing himself in what necessarily is an awkward and dangerous motion that his employment forced him to endure.  This result would be unreasonable and absurd.  Just as a broken piece of equipment, an unbalanced body, or a rabid dog on the chase might play a role in a claimant's accident, so too can simple use -- even careful, proper use -- of

---

[16] For the reasons set forth in this opinion, there is no indication in the statute that an injury must be "preceded" by an event.  Additionally, we disagree with the Dissent's note 3 that "'a traumatic event' would appear to require 'the application of external force or violence' to the body" and "[n]o such 'external force or violence' was involved in Young's shoulder injury" is unsupported by the language of the statute.  The Legislature used the word flagged by the Dissent in its adjective form: an "unexpected *traumatic* event" is an accident.  Regardless of the fact that the adjective is defined by reference to the noun in Webster's, the Legislature did not employ the noun form of "trauma," so as to require that an accident must be caused by trauma or follow trauma.  Rather, the statute reads simply that "an accident as used in this chapter shall mean an unexpected traumatic event or unusual strain. . . ."

21

equipment such as this, result in an accident. In the words of the Commission, "the employee suffered an accident, because despite the fact employee had pulled himself up onto the truck many times before, *this time* he felt a pop in his shoulder, and *this time* he was unable to lift his arm afterward." Simply put, the definition of "accident" does not require examination of these surrounding circumstances for a cause.

This point is denied.

### Conclusion

The Commission's awards as to both injuries are affirmed.

_____
Gary D. Witt, Judge

Joseph M. Ellis, Victor C. Howard, Thomas H. Newton, James E. Welsh, Mark D. Pfeiffer, Karen King Mitchell, Cynthia L. Martin, Anthony Rex Gabbert, Judges, Concur in the Majority Opinion
Chief Judge Alok Ahuja concurs in part and dissents in part in separate opinion, joined by Judge Lisa White Hardwick



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

MILTON YOUNG,                      )
      Respondent, )
v.                                 ) **WD76567**
          ) **consolidated with WD76568**
BOONE ELECTRIC COOPERATIVE,        )
      Appellant, ) **FILED: April 14, 2015**
          )
TREASURER OF THE STATE OF          )
MISSOURI CUSTODIAN OF THE          )
SECOND INJURY FUND,                )
      Respondent. )

### OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur in affirmance of the Labor and Industrial Commission's award of compensation to Milton Young for his knee injury. I respectfully dissent, however, from the majority's affirmance of the separate award for an injury to Young's right shoulder.

The Commission found that Young sustained the shoulder injury while engaged in the routine task of lifting himself up onto a platform on his work truck. Young had performed this same task innumerable times without incident. Because Young's shoulder injury was apparently caused by his performance of his usual work duties in the normal manner, it does not appear that Young's shoulder injury was caused by an "unusual strain" as required by the definition of an "accident" found in § 287.020.2.[1] That injury would accordingly not be compensable.

---

[1] Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2013 Cumulative Supplement. No substantive changes have been made to the relevant statutory provisions since Young's shoulder injury on October 2, 2009.

The "unusual strain" requirement was added to the definition of an "accident" by the 2005 amendments to the Workers' Compensation Law. At the time of the 2005 amendments, the term "unusual strain" had been given a well-understood meaning in Missouri workers' compensation caselaw for more than 60 years, and that interpretation was still being applied with respect to particular classes of injuries. Under the well-establishing meaning of the term, an "unusual strain" would only be found where a worker was injured while performing a task outside his or her normal job responsibilities, or while performing a normal task in a non-routine way. The legislative intent behind the addition of the "unusual strain" requirement to the definition of "accident" in 2005 is obvious: to restore the understanding of the term "accident" which had prevailed for 40 years prior to a 1983 Missouri Supreme Court decision. We cannot ignore the copious and undeniable evidence of the legislature's intent, whatever our views as to the wisdom of the legislature's policy choices.

Because Young's shoulder injury does not appear to have been caused by an "unusual strain," I would reverse the Commission's award of compensation for that injury, and remand to the Commission to reconsider the compensability of Young's shoulder injury under a proper understanding of the term "accident."

**Discussion**

The Workers' Compensation Law provides that:

> The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

§ 287.020.2. The Act makes clear that the "accident" – meaning, the "unexpected traumatic event" or "unusual strain" – must cause the claimant's compensable injury, and the resulting disability. Thus, § 287.020.3(1) states:

2

> An injury by accident is compensable only if *the accident was the prevailing factor in causing both the resulting medical condition and disability*. "The prevailing factor" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.

(Emphasis added.) Similarly, § 287.020.3(2)(a) provides that "[a]n injury shall be deemed to arise out of and in the course of the employment only if . . . [i]t is reasonably apparent, upon consideration of the circumstances, that *the accident is the prevailing factor in causing the injury* . . . ." (Emphasis added.)[2]

Thus, to establish a right to worker's compensation, a claimant must establish that an "unexpected traumatic event" or "unusual strain" caused his injury. The majority opinion does not contend that Young experienced "an unexpected traumatic event."[3] For reasons explained below, it cannot be said that Young's shoulder injury resulted from an "unusual strain," either.

According to the dictionary, "strain" means "excessive or difficult exertion or labor," "a violent or overtaxing effort." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 2255 (1993 unabridged ed.). "Unusual" is defined as "being out of the ordinary," "deviating from the normal," or "being unlike others." *Id.* at 2514. "Unusual" is a relative term, however, and the dictionary definition leaves open a critical question: "unusual" *in relation to what?*

This question has been asked before, and answered in various ways. Workers' compensation statutes across the country contain provisions, like § 287.020.2, which specify that

---

[2] The majority opinion confuses this point, stating that under § 287.020.2, "the 'accident' must be caused by a specific event during a single work shift." Maj. Op. at 16. The majority misreads § 287.020.02, and erroneously suggests that the "accident" must be *the result* of some other event, rather than being *the cause* of an injury. Section 287.020.02 only requires that "objective symptoms of an injury" be "caused by a specific event during a single work shift"; it does not require that the "accident" be caused in this manner. When read in conjunction with §§ 287.020.3(1) and (2)(a), § 287.020.2 simply requires that an "accident" constitute "a specific event during a single work shift." This serves to distinguish an injury by "accident" from an injury constituting an "occupational disease" (which can result from the repeated exposure to injury-causing conditions). § 287.067.

[3] Although it is unnecessary to discuss the issue in detail, the dictionary definitions quoted by the majority indicate that, as relevant here, a "traumatic event" requires "the application of external force or violence" to the body. Maj. Op. at 14-15. No such "external force or violence" was involved in Young's shoulder injury.

3

compensable injuries must result from "unusual" exertion or circumstances. As a leading treatise explains, courts have interpreted the term "unusual" in these statutes in three different ways:

> To summarize: there can thus be identified three answers to the question: "unusual compared with what?" These are:
>
> (1) Unusual compared with *this employee's* normal strains.
>
> (2) Unusual compared with the strains of *employment life generally*.
>
> (3) Unusual compared with the wear and tear of *everyday nonemployment life*.

Arthur Larson & Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 44.05[4][d], at 44-51 (2014).

Although the majority opinion does not explicitly state how it interprets the word "unusual" in § 287.020.2, it appears that the majority adopts the third alternative suggested by the treatise-writer: namely, that a strain is "unusual" if it exceeds the level of exertion or physical demand experienced in normal non-employment life. Thus, the majority opinion takes pains to compare the lift required to climb onto Young's truck to the rise of a normal stair, and the height of an ordinary desk. Maj. Op. at 15. Similarly, the majority opinion states that, although Young experienced the strain of lifting himself up onto his truck "repeated[ly]," that strain was nonetheless "unusual." *Id.* at 16, 19. The majority offers absolutely no justification for adopting the third alternative meaning of the word "unusual," when other interpretations are equally available, and equally reasonable.[4]

---

[4] It appears that the Commission's decision (and arguably, the majority opinion) adopt a *fourth* definition of "unusual," under which a strain will be considered "unusual" whenever it produces an injury. The problem with such a definition, of course, is that it is circular, and renders the term "unusual" redundant and unnecessary. Section 287.020.3 already requires that an "unusual strain" cause an injury in order to support a claim for compensation. The word "unusual" must do something more than simply repeat the requirement that a "strain" cause an injury. *See*, *e.g.*, *Saint Charles Cnty. v. Dir. of Revenue*, 407 S.W.3d 576, 578 (Mo. banc 2013) ("When engaging in statutory construction, this Court recognizes that 'every word, clause, sentence, and provision of a statute must have effect,'" and that "the legislature did not insert superfluous words into a statute" (quoting *801 Skinker Blvd. Corp. v. Dir. of Revenue*, 395 S.W.3d 1, 5 (Mo. banc 2013))); *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013).

Contrary to the majority, I conclude that the phrase "unusual strain" in § 287.020.2 must be interpreted consistently with the first option identified by the treatise; namely, a strain will be considered "unusual" only when it exceeds the normal physical demands of the claimant's job. There are two considerations which require this result: (1) this is the way in which Missouri workers' compensation caselaw has consistently interpreted the concept of an "unusual strain" (as part of the definition of an "accident") since at least 1941; and (2) this is the way in which the concept of an "unusual strain" continues to be applied with respect to particular types of injuries under the Workers' Compensation Law. Under well-established principles of statutory construction, we are required to interpret the phrase "unusual strain" consistently with the way in which it has previously been interpreted by Missouri courts, and consistently with the way the same term is understood in other contexts under the Workers' Compensation Law.

**I.**

The term "unusual strain" has a well-developed, established meaning in the caselaw applying Missouri's Workers' Compensation Law. Under long-standing principles of statutory construction, we are required to read the term "unusual strain" consistently with this prior judicial construction: "'When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action.'" *Balloons over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 825-26 (Mo. banc 2014) (quoting *Cook Tractor Co. v. Dir. of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006)); *see also*, *e.g.*, *Est. of Nelson v. Mo. Dep't of Social Servs.*, 363 S.W.3d 423, 426 n.5 (Mo. App. W.D. 2012). Resort to the accepted legal definition of "unusual strain" is also required by § 1.090, which specifies that "technical words

5

and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."[5]

When first enacted, the Workers' Compensation Law defined "accident" as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." § 3305(b), RSMo 1929. The earliest cases interpreted the statutory definition liberally, requiring only that the injury itself be "unexpected or unforeseen." *See, e.g., Carr v. Murch Bros. Constr. Co.*, 21 S.W.2d 897, 899 (Mo. App. 1929).

This liberal construction was rejected by the Missouri Supreme Court in *State ex rel. Hussman-Ligonier Co. v. Hughes*, 153 S.W.2d 40 (Mo. 1941). In *Hussman*, the claimant suffered a heart attack while carrying a bucket of water in the performance of his usual duties. *Id*. at 41. The Supreme Court held that the claimant had not suffered an injury "by accident," and was therefore not entitled to compensation. The Court likened the *Hussman* case to its earlier decision in *DeLille v. Holton-Seelye Co.*, 66 S.W.2d 834 (Mo. 1933), which denied compensation for death caused when an aneurysm ruptured while the claimant was sawing a piece of lumber. The Court explained:

> The facts in the *DeLille* case, *supra*, are very similar to those in the instant case. In both, the injury and death were caused, or hastened, by an increased flow of blood through diseased blood vessels; such increased flow being due to *necessary and customary physical exertion incident to the normal duties of the workman*. In neither case was there any unusual occurrence, such as a slip, or fall, or abnormal strain.

*Id.* at 42 (emphasis added).

---

[5] It is unclear whether it is necessary to find the term "unusual strain" to be ambiguous before referring to the earlier caselaw interpreting the term. To the extent a finding of ambiguity is necessary, the treatise quoted above establishes beyond question that the term "unusual" – as used in this specific context – is subject to multiple potential meanings. This establishes the term's ambiguity. *See*, *e.g.*, *State v. Liberty*, 370 S.W.3d 537, 548 (Mo. banc 2012) ("'If statutory language is subject to more than one reasonable interpretation, then the statute is ambiguous.'" (quoting *State v. Graham*, 204 S.W.3d 655, 656 (Mo. banc 2006))).

6

Following *Hussman*, Missouri decisions repeatedly held that, in order to be compensable, a claimant's injury must arise from an "unusual or abnormal strain," meaning physical demands beyond those which were normal for the claimant's particular employment. As the Court explained in *Schoessel v. Standard Automotive Components*, 539 S.W.2d 708 (Mo. App. 1976),

> it has become clear that an employee must at least prove he suffered unusual and abnormal strain before he can receive compensation for an "accident." A long line of cases attests to this fact. . . . Injuries produced by strains which are normal for the job to be performed in a customary fashion are not compensable although the amount of straining may be great or would be considered abnormal in other classes of employment.

*Id.* at 709-10 (citations and internal quotation marks omitted).

*Russell v. Southwest Grease & Oil Co.*, 509 S.W.2d 776 (Mo. App. 1974),[6] similarly recognized that this "unusual strain" rule had become an established component of Missouri's workers' compensation jurisprudence. *Russell* affirmed the Commission's denial of compensation for a worker who died of a heart attack while unloading barrels from a truck, because there was no evidence of an "unusual strain."

> [T]he work being done by [the worker] on the afternoon of his death was simply his usual, ordinary routine type of work. The barrels were no bigger or different than those which he had been delivering for the past 5 or 6 years. The unloading by him from the truck by the hydraulic lift was no different than what he had previously done. Still further, there is no showing whatsoever of any slip, fall or other similar untoward event.

*Id.* at 781.

*Russell* rejected the claimants' argument that an "unusual strain" should not be required:

> As an alternative proposition, claimants argue that the Commission erred in following the rule that in order for a heart attack to be compensable, the attack

---

[6] *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003), clarified the proper standard for judicial review of Commission decisions, and overruled a large number of prior appellate decisions on this discrete point of law. *Id.* at 223, 224–32. I cite and rely on several such cases in this opinion for legal propositions unrelated to the standard of review, without further notation. In addition, as recognized in *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999), several of the cases cited in this opinion rely on a causation standard which was abrogated by 1993 amendments to the Workers' Compensation Law. This fact is not separately noted with respect to each such case.

must have resulted from an unusual strain not customarily exerted by the employee in his normal work. Claimants rely heavily upon the writings of Professor Larson, and they cite cases from other jurisdictions representing what is said to be the majority rule permitting recovery of compensation even in situations where the employee has not been subjected to unusual strain.

The same arguments and the same authorities were presented to this court and were by this court rejected in *Herbert v. Sharp Brothers Contracting Co.*, 467 S.W.2d 105 (Mo. App. 1971), on the basis of authoritative Missouri Supreme Court decisions to the contrary. Since the decision in *Herbert*, the Missouri Supreme Court in *Snuggs v. Steel Haulers, Inc.*, 501 S.W.2d 481, l.c. 485 (Mo. banc 1973) has reiterated the Missouri rule which requires unusual strain for the showing of an accident. Therefore, now with even more reason than was true when *Herbert* was decided, this court must adhere to the unusual strain rule.

*Id.* at 782.[7]

Missouri courts applied this "unusual strain" doctrine in dozens upon dozens of cases.

Thus, some cases reversed Commission awards of compensation because of the lack of an

"unusual and abnormal strain,"[8] others affirmed the Commission's denial of compensation on

this basis,[9] while still other cases held that a claimant was entitled to compensation because he or

---

[7] The existence of this "unusual strain" doctrine was also recognized in, *e.g.*, Robert Domrese & Stephen Graham, *Workmen's Compensation in Missouri*, 19 St. Louis U. L.J. 1 (1974):

> If a worker strains his back or suffers a hernia while doing his work in the usual fashion, it is to be anticipated. Only if the strain is accompanied by a sudden slip or a fall, or if the strain is abnormal, non-routine, and unexpected, will the injured worker qualify for compensation.

*Id.* at 23 (footnotes omitted).

[8] *See*, *e.g.*, *Baker v. Krey Packing Co.*, 398 S.W.2d 185, 189 (Mo. App. 1965) (reversing award of compensation where "[a]ccording to [claimant's] own testimony he was doing exactly the same kind of work he had done practically every working day for approximately five years, and was performing it in his usual and customary manner"); *Flippin v. First Nat'l Bank of Joplin*, 372 S.W.2d 273 (Mo. App. 1963) (reversing award of compensation based on conclusion that claimant failed to present evidence of an "unusual or abnormal strain" where worker died of heart attack after shoveling snow from sidewalk), overruled by *Snuggs v. Steel Haulers, Inc.*, 501 S.W.2d 481, 486 (Mo. banc 1973).

[9] *See*, *e.g.*, *Principe v. Great Atl. & Pac. Tea Co.*, 618 S.W.2d 284, 285-86 (Mo. App. W.D. 1981); *Schoessel*, 539 S.W.2d at 710 ("Here we have a situation where the employee was engaged in his normal work, using the same method he had often used, without any variance of his routine. The only thing unusual was the onset of pain."); *Gold v. Sharp, Kidde, Webb*, 564 S.W.2d 612, 614 (Mo. App. 1978); *Roux v. Dugal's Big Star Food Store*, 510 S.W.2d 810, 812 (Mo. App. 1974) (worker who injured back while stooping down to pick up coupon off the floor; "whether the claimant has sustained an accident within the meaning of § 287.020(2) is dependent upon whether there was an abnormal or unusual strain which brought about her injury. Where an employee experiences an injury as a result of normal and customary duties and within the normal routine there is no compensable accident."); *Mason v. F.W. Strecker Transfer Co.*, 409 S.W.2d 267, 270 (Mo. App. 1966) (noting distinction between "cases [where] there was some evidence of an unusual or abnormal strain," and "cases where one suffers an injury in the course of his usual work and no abnormal or unusual strain is present"; affirming denial of compensation for back injury sustained while loading hand truck with cargo, where there was no evidence of any

8

she had presented sufficient evidence of an "unusual or abnormal strain" causing their injuries.[10]

The cases cited in the preceding footnotes are only a small sampling of the Missouri appellate decisions which applied the concept of an "unusual or abnormal strain" in determining the compensability of workplace injuries.

The Missouri Supreme Court abandoned the "unusual strain" requirement in *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983). *Wolfgeher* recognized that the "unusual strain" doctrine, which had developed following *Hussman*, required that a worker be injured doing something other than his or her routine work in the normal way:

"slip, fall or other mishap which caused the injury," or that there was anything "unusual in the manner in which [claimant] was working."); *Harryman v. L-N Buick-Pontiac, Inc.*, 402 S.W.2d 828, 831 (Mo. App. 1966) (back injury sustained by automobile mechanic while leaning into vehicle's engine compartment to remove head from engine block; no "unusual or abnormal strain"; "if the employee suffers an injury resultant from a strain while he is engaged in doing his normal or customary duties without variance from his normal routine, it is not a compensable accident within the meaning of the statutes"); *Brandt v. E.O. Dorsch Elec. Co.*, 400 S.W.2d 452, 456 (Mo. App. 1966) (affirming finding that claimant "suffered no abnormal or unusual strain" causing back injury; claimant was injured while hoisting light fixture up to scaffolding where he was working); *Hall v. Mid-Continent Mfg. Co.*, 366 S.W.2d 57, 63 (Mo. App. 1963) (claimant injured while attempting to remove material which was stuck in machine; "Her method in attempting to loosen the machine was identical with the method used by her on various other occasions and over a period of many months.").

[10] *Snuggs v. Steel Haulers, Inc.*, 501 S.W.2d 481, 485 (Mo. banc 1973) (reversing Commission's denial of compensation, and concluding that truck driver's fall and resulting skull fracture were caused by an "accident," because driver "was subjected to an unusual, abnormal and continuous physical and mental strain" in having to work for 27-hour period to meet a deadline); *Davies v. Carter Carburetor*, 429 S.W.2d 738, 747-48 (Mo. 1968) (affirming Commission's award of benefits where claimant injured back when he lost his balance while lifting a tray of automotive parts); *Merriman v. Ben Gutman Truck Servs., Inc.*, 392 S.W.2d 292, 297-98 (Mo. 1965) (reversing Commission's denial of compensation; undisputed evidence established that claimant "was required to assume an extended position with his body which placed him completely out of a normal, usual or routine lifting position" while lifting "a heavy, cumbersome coil of rope"; "The strain was thus abnormal; was unexpected in that it was more strain than claimant anticipated he would exert, and hence was an accident within the meaning of Section 287.020(2)"); *Crow v. Missouri Implement Tractor Co.*, 307 S.W.2d 401, 405 (Mo. banc 1957) (reversing Commission's denial of compensation, and clarifying that "where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall."); *Homan v. Am. Can Co.*, 535 S.W.2d 574, 576 (Mo. App. 1976) (evidence supported Commission's finding of an "unusual or abnormal strain" where machine operator injured back when the stack of strips he was attempting to lift to feed into the machine shifted and worker assumed an awkward position and exerted more force than usual as he attempted to stabilize the stack); *Wilson v. Kansas City*, 479 S.W.2d 135, 140 (Mo. App. 1972) (reversing Commission's denial of compensation, and finding that claimant's injuries resulted from "unusual or abnormal strain," where claimant was injured when boom operator mistakenly lowered tree onto the ground next to the hole prepared for it, rather than into the hole, and claimant attempted to lower tree into hole himself); *Herbert v. Sharp Bros. Contracting Co.*, 467 S.W.2d 105, 108 (Mo. App. 1971) (reversing Commission's denial of benefits where decedent suffered heart attack as a result of assisting in moving and starting 1,500 to 2,000-pound electrical generator; emphasizing that decedent, a supervisor, was "'engaged *in doing something beyond and different from his normal routine*,'" consisting of "'overexertion' [which] was '*unusual to the deceased*'").

9

> The unexpected or abnormal strain *usually* results from the performance of work in an abnormal manner or in a manner not routine, but this is not necessarily so. Abnormal strain may also result from the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration.

*Id.* at 783 (citations omitted). *Wolfgeher* abandoned the "unusual strain" requirement, reasoning that it was inconsistent with the liberal construction to be applied to the Worker's Compensation Law, and with the underlying purpose of the Act to place the cost of workplace injuries on employers; "prevent[ed] compensation for gradual and progressive injuries which result from repeated or constant exposure to on-the-job hazards"; was inconsistent with the statutory treatment of occupational disease claims; and was inconsistent with the interpretation applied by the vast majority of other States. *Id.* at 785.

Later decisions recognize that *Wolfgeher* had the effect of eliminating the "unusual strain" requirement from Missouri worker's compensation jurisprudence. Thus, in *Wynn v. Navajo Freight Lines, Inc.*, 654 S.W.2d 87 (Mo. banc 1983), the Supreme Court observed that *Wolfgeher* "eras[ed] the abnormal or unusual strain requirement," and "teaches that the right to compensation is not lost simply because the strains described are not unusual." *Id.* at 89.[11] The most recent case recognizing *Wolfgeher*'s abandonment of the "unusual strain" concept was *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo. App. W.D. 2002). After discussing the history of the interpretation of the term "accident" in Missouri's Worker's Compensation Law, *Bennett* explained that in the case before it, the administrative law judge "took the position that, to be compensable, Bennett's injury had to be immediately preceded by either a sudden fall . . .

---

[11] *See also*, *e.g.*, *State ex rel. McDonnell Douglas Corp. v. Ryan*, 745 S.W.2d 152, 154 (Mo. banc 1988) (*Wolfgeher* "h[e]ld[ ] that a[n] unexpected work-related injury not produced by unusual or abnormal strain is an 'accident'"); *Carter v. Jones Truck Lines, Inc.*, 943 S.W.2d 821, 824 (Mo. App. S.D. 1997); *Rector v. City of Springfield*, 820 S.W.2d 639, 642 (Mo. App. S.D. 1991) (en banc); *Arens v. Delcon Corp.*, 760 S.W.2d 914, 915-16 (Mo. App. W.D. 1988); *Westerhold v. Unitog–Holden Mfg. Co.*, 707 S.W.2d 456, 458 (Mo. App. W.D. 1986) ("*Wolfgeher* does not eliminate the statutory requirement of accident but dispenses with the employee's need to prove abnormal or unusual strain to show an accident."); *Staab v. Laclede Gas Co.*, 691 S.W.2d 343, 344 (Mo. App. E.D. 1985); *Matthews v. Roadway Express, Inc.*, 660 S.W.2d 768, 771 (Mo. App. S.D. 1983).

10

or by some unusual strain upon her knee." *Id.* at 529. The Court held that "[t]his was an erroneous application of the law under *Wolfgeher*." *Id.*

While it may be that *Wolfgeher* "eras[ed] the abnormal or unusual strain requirement" in 1983,[12] the General Assembly resurrected that requirement in 2005, and restored the pre-*Wolfgeher* understanding of the term "accident." Any contrary interpretation of § 287.020.2 is inconsistent with this obvious legislative intent.

## II.

Besides the pre-*Wolfgeher* caselaw applying the "unusual strain" requirement, a second compelling reason exists to interpret the phrase "unusual strain" to require some exertion beyond the ordinary physical demands of the claimant's employment: despite *Wolfgeher*, the "unusual strain" concept continued to be applied in 2005 under other provisions of the Worker's Compensation Law, and the interpretation of the concept in connection with those other statutory provisions was consistent with the pre-*Wolfgeher* decisions.

"'[W]hen the same or similar words are used in different places within the same legislative act and relate to the same or similar subject matter, then the statutes are *in pari materia* and should be construed to achieve a harmonious interpretation of the statutes.'" *Williams v. State*, 386 S.W.3d 750, 754 (Mo. banc 2012) (quoting *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992)).

The phrase "unusual strain," which was added to the definition of an "accident" in 2005, has appeared in § 287.195 since 1957. Section 287.195, which addresses the compensability of work-related hernias, provides:

---

[12] *Wynn*, 654 S.W.2d at 89.

11

In all claims for compensation for hernia resulting from injury arising out of and in the course of the employment, it must be definitely proved to the satisfaction of the division or the commission:

>    (1)     That there was an accident or *unusual strain* resulting in hernia;

>    (2)     That the hernia did not exist prior to the accident or *unusual strain* resulting in the injury for which compensation is claimed.

(Emphasis added.)

The term "unusual strain," as used in § 287.195, has been interpreted consistently with the pre-*Wolfgeher* caselaw. Thus, in *McClain v. Yellow Cab Co.*, 439 S.W.2d 200 (Mo. App. 1969), the Court explained that

>    Performance of any manual task is accompanied by a certain degree of straining the muscles and other parts of a workman's body. The amount of strain incurred will, of course, vary according to the work to be accomplished and the circumstances and conditions under which it is being performed. Injuries produced by strains which are normal for the job to be performed in a customary fashion are not compensable although the amount of straining may be great or would be considered abnormal in other classes of employment or if performed in an abnormal manner under unusual circumstances. On the other hand, if an employee suffers an unexpected and abnormal strain (at least while he is engaged in doing something beyond and different from his normal routine) and, as a result thereof, sustains an injury which is not the result of orderly natural causes, the injury is (the result of) an accident.

*Id.* at 203 (citations and internal quotation marks omitted); *see also Pattengill v. General Motors Corp.*, 845 S.W.2d 630, 631 (Mo. App. E.D. 1992).[13] *McClain* reversed the Commission's

---

[13] The majority opinion suggests that *Pattengill* adopted the post-*Wolfgeher* understanding of an "accident." Maj. Op. at 19-20 n.15. That contention simply misreads *Pattengill*. Although *Wolfgeher* ultimately rejected the "unusual strain" requirement, it first described the contours of the "unusual strain" doctrine. It is that part of *Wolfgeher* – which describes the "unusual strain" doctrine – which is quoted in *Pattengill*. 845 S.W.2d at 632. The standard *Pattengill* derives from *Wolfgeher* – that an "unusual strain" includes "the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration" – is fully consistent with the other "unusual strain" cases discussed in this opinion. *Id.* In addition, the other two cases cited by *Pattengill* clearly adhere to the "unusual strain" requirement as it was applied prior to *Wolfgeher*. *Id.* (citing *Merriman v. Ben Gutman Truck Serv., Inc.*, 392 S.W.2d 292, 297-98 (Mo. 1965) (finding compensable injury when claimant "was required to assume an extended position with his body which placed him completely out of a normal, usual or routine lifting position," and was injured while "exerting his full force in that position"); *Alexander v. Pin Oaks Nursing Home*, 625 S.W.2d 192, 193 (Mo. App. E.D. 1981) ("Work done in an awkward or unbalanced position, albeit in the execution of a regular assignment, which causes the employee to undergo a stress exceeding the usual and begets an unanticipated strain, results in a compensable injury.")). The injury-causing event in

12

award of compensation to a taxicab driver who suffered a hernia as a result of loading a customer's luggage into his cab, because of a lack of evidence that the driver was exerting himself in a manner that was "unusual or abnormal to that customarily experienced in the discharge of his usual duties." 439 S.W.2d at 205.

A similar reading has been applied to § 287.120.8, which states that "[m]ental injury resulting from work related stress does not arise out of and in the course of the employment, unless it is demonstrated that the stress is work related and was extraordinary and unusual." Under § 287.120.8, "disabilities arising from work related stress are subject to the 'unusual strain' doctrine." *George v. City of St. Louis*, 162 S.W.3d 26, 30 (Mo. App. E.D. 2005). And here too, an "unusual strain" requires that the worker experience stress which is out of the ordinary for the worker's particular employment: "'[T]he proper comparison for purposes of Section 287.120.8 . . . is to compare Employee's work-related stress with the stress encountered by employees having similar positions, regardless of employer, with a focus on evidence of the stress encountered by similarly situated employees for the same employer.'" *Schaffer v. Litton Interconnect Tech.*, 274 S.W.3d 597, 602-03 (Mo. App. S.D. 2009) (footnote omitted; quoting *Williams v. DePaul Health Ctr.*, 996 S.W.2d 619, 628 (Mo. App. E.D. 1999)); *see also Carnal v. Pride Cleaners*, 138 S.W.3d 155, 158-59 (Mo. App. W.D. 2004); *Sherman v. First Fin. Planners, Inc.*, 41 S.W.3d 633, 637 (Mo. App. E.D. 2001).

Thus, at the time the legislature modified the definition of an "accident" in 2005, an "unusual strain" requirement was being applied in two other contexts in the Worker's Compensation Law. In each of those contexts, the phrase was interpreted to require that an

---

*Pattengill* plainly satisfied the well-established understanding of an "unusual strain": the claimant "was injured while standing on top of a 12-foot ladder and reaching up as far as he could to guide a 300- to 500-pound object suspended over his head by ropes held by four men." 845 S.W.2d at 632.

13

employee experience stresses or demands outside those which were typical in the employee's particular occupation.

In interpreting a statute, we presume that the General Assembly enacts new legislation with knowledge of existing law, and with knowledge of the interpretation which appellate courts have placed on existing statutes. *See*, *e.g.*, *E&B Granite, Inc. v. Dir. of Revenue*, 331 S.W.3d 314, 317 (Mo. banc 2011); *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 667 (Mo. banc 2010). Here, the "unusual strain" concept has been employed in two other contexts within the Worker's Compensation Law, and has been interpreted identically in both contexts. We must presume that the 2005 General Assembly intended to adopt this uniform interpretation of the "unusual strain" requirement.

### III.

Reliance on the pre-2005 caselaw discussed above is not precluded by § 287.020.10, which provides:

> In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of "**accident**", "**occupational disease**", "**arising out of**", and "**in the course of the employment**" to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care and Rehabilitation*, 80 S.W.3d 524 (Mo. App. W.D. 2002); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.

(emphasis added).

Section 287.020.10 did not erase history, and does not prevent our reliance on the caselaw applying the "unusual strain" requirement. First, § 287.020.10 plainly does not apply to the interpretation of an "unusual strain" in connection with hernia injuries under § 287.195, or in connection with stress-related psychological injuries under § 287.120.8.

14

Second, I find it hard to believe that in 2005 the legislature felt it necessary to "reject and abrogate" pre-*Wolfgeher* caselaw interpreting the term "accident," when that caselaw had already been overruled by the Missouri Supreme Court more than twenty years earlier. The more plausible reading of § 287.020.10 is that it had the effect of *restoring* the pre-*Wolfgeher* understanding of an "accident": *Bennett* described and applied *Wolfgeher*'s rejection of the "unusual strain" requirement, and § 287.020.10 specifically lists *Bennett* as a case the General Assembly "rejected and abrogated."

Third, and most importantly, the 2005 legislature for the first time added an explicit "unusual strain" requirement into the "accident" definition. As explained in §§ I and II, above, the "unusual strain" concept was well understood in 60 years of Missouri caselaw at the time of the 2005 amendments, and was being employed in connection with other provisions of the Worker's Compensation Law which were unchanged by the 2005 amendments. The legislature's specific incorporation of an "unusual strain" requirement into the definition of an "accident" must take precedence over the general edict of § 287.020.10 that prior caselaw is abrogated. *See*, *e.g.*, *Turner*, 318 S.W.3d at 668 ("The doctrine of *in pari materia* recognizes that statutes relating to the same subject matter should be read together, but where one statute deals with the subject in general terms and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute.").

## IV.

*Wolfgeher* offered cogent policy reasons for abandoning the "unusual strain" requirement: that requirement is inconsistent with the law in a majority of the States; it treats injuries by "accident" and by "occupational disease" differently; and it is inconsistent with the general purpose of the Workers' Compensation Law to impose the cost of workplace injuries on employers. To this I would add that, if the "unusual strain" requirement is interpreted as I

15

believe it must be, it may limit compensation in occupations in which workers are subject to the most strenuous physical demands, and face the highest risk of injury. In those physically demanding occupations, a certain incidence of workplace injuries may be an inevitable aspect of the work, even when that work is performed in the customary and routine manner. A compelling argument could be made that these are precisely the sorts of injuries which *should* be compensable: employers should bear the cost of accidents which are an inherent by-product of employees' customary work. Yet the 2005 legislature adopted precisely the opposite approach.

While there may be strong public policy reasons for a broad definition of covered "accidents," I am not aware of any *legal principle* which prevented the General Assembly from adopting a more narrow compensation standard. And that is what it did by amending the "accident" definition in 2005 to impose an "unusual strain" requirement. Whether I consider that decision to be good or bad public policy is irrelevant; we must apply the statute as written. "Courts determine questions of power, not policy." *Bader Realty & Inv. Co. v. St. Louis Housing Auth.*, 217 S.W.2d 489, 493 (Mo. banc 1949); *see also, e.g., State ex rel. Reser v. Rush*, 562 S.W.2d 365, 369 (Mo. banc 1978); *State ex rel. KCP&L Greater Mo. Operations v. Cook*, 353 S.W.3d 14, 27 (Mo. App. W.D. 2011) (en banc) (citing *State v. Rowe*, 63 S.W.3d 647, 649-50 (Mo. banc 2002)). And, although resurrection of the "unusual strain" requirement may be anachronistic, it can hardly be considered absurd or irrational. This was, after all, the legal standard which governed the compensability of all accidental workplace injuries from the time of the *Hussman* decision in 1941, through the overruling of that case in *Wolfgeher* in 1983.

### Conclusion

When it added the "unusual strain" requirement to the definition of an "accident" in 2005, the General Assembly acted against the backdrop of 60 years of workers' compensation caselaw which interpreted the phrase. Under the well-establishing meaning of the term, an

16

"unusual strain" would only be found where a worker was injured while performing a task outside his or her normal job responsibilities, or while performing a normal task in a non-routine way. The legislature evidently intended to apply this "unusual strain" doctrine to all injuries, not just to particular classes of injuries, and thereby restore the definition of an "accident" which had prevailed for more than 40 years prior to the Supreme Court's decision in *Wolfgeher*.

The majority's reading of the post-2005 "accident" definition ignores the obvious evidence of legislative intent concerning the "unusual strain" requirement. Under a correct understanding of the "unusual strain" requirement, Young's shoulder injury would not be compensable. I therefore dissent in part, and would reverse the Commission's award related to Young's right shoulder injury. Because this is an issue of first impression, and because Young may not have anticipated the evidentiary burden placed upon him by the post-2005 "accident" definition, I would remand the case to the Commission to afford Young an opportunity to present evidence to satisfy the standard discussed in this opinion.

_____
Alok Ahuja, Chief Judge

17